## 1778

W.E. ANTHONY, Sr., D.L. Cannon, J.T. Craig, W.L. Carpenter, J.A. Flanagan, L.D. Freeman, R.S. Gaddis, J.T. Gressette, T.A. Kingsmore, C.F. McElrath, R.E. McKinnell, N.M. Perrin, R.L. Smith, W.V. Hughes, III, JES Properties Limited, a South Carolina Limited Partnership, Individually and Derivatively on behalf of JES Properties Limited, a South Carolina Limited Partnership, Respondents v. PADMAR, INC., Kenneth R. Padgett, Jr., Fred M. Martin, Horsham Properties Limited and Horsham Properties Limited (BVI), Appellants.

(415 S.E. (2d) 828)

Court of Appeals

*O.G. Calhoun* and *Jesse C. Belcher*, both of *Haynsworth, Marion, McKay & Guerard,* and *Larry D. Estridge,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellants.*

*William H. Thomas, III,* of *Dobson & Dobson,* Greenville, and *Paul E. Tinkler,* of *Wallace & Tinkler,* Charleston, *for respondents.*

Heard Dec. 9, 1991.

Decided Mar. 2, 1992.

CURETON, Judge:

This is an appeal from a trial court order granting partial summary judgment. The case involves the sale of the assets of a limited partnership. Several limited partners challenge the sale claiming the general partners did not have authority to consummate the transaction. The limited partners sued the purchaser and sought rescission of the sale. They also sought damages from the general partners. The trial court heard cross motions for summary judgment by the limited partners, the general partners, and the purchaser. The trial judge granted partial summary judgment to the limited partners on the issue of the authority of the general partners to consummate the sale. The trial judge also held the defenses of ratification and estoppel asserted by the general partners were without merit as a matter of law. As to the purchaser, the court held there was no authority to consummate the sale but the defense of estoppel raised by the purchaser was deemed a novel issue and not decided by the trial court. The general partners and the purchaser appeal.

## I.

In 1983, J.E. Sirrine Company was acquired by CRS Company. CRS Company did not wish to purchase the real estate owned by J.E. Sirrine Company. Therefore, J.E. Sirrine Company created JES Properties Limited Partnership (JES Ltd.) to own the real estate. J.E. Sirrine Company was originally the sole limited partner in JES Ltd. Fred Martin and Kenneth Padgett were the general partners in the limited partnership. Martin and Padgett formed a corporation, Padmar, Inc., for the purpose of managing JES Ltd. The shareholders of J.E. Sirrine Company were given the opportunity to become limited partners in JES Ltd. and limited partnership interests proportionate to their shares in J.E. Sirrine Company were distributed to them. JES Ltd. now has approximately 480 limited partners. Fourteen of those limited partners are plaintiffs in this suit.

The assets of JES Ltd. consisted primarily of four parcels of real estate located in South Carolina, North Carolina, and

Texas.[1] Two of the parcels were developed. In 1986, JES Ltd. signed a contract with Horsham-BVI for the sale of all of JES Ltd.'s assets to Horsham-BVI. This sale was subject to the consent of the requisite percentage of the partners of JES Ltd. The total purchase price including the assumption of existing indebtedness and the release of J.E. Sirrine Company and JES Ltd. from that indebtedness was approximately $24,000,000.

The general partners submitted the contract to the limited partners for their approval in early 1987. A Solicitation Statement describing the transaction and a ballot accompanied the submission. The Solicitation Statement specifically pointed out that the sale was being made pursuant to Section 8.03(f) of the partnership agreement and upon collection of the proceeds of the sale the partnership would dissolve. The vote on the proposal was completed on March 11, 1987. The general partners contend they obtained approval for the sale and dissolution of the partnership by a margin of 50.3% to 49.7%. The closing was set for August 1987.

After the vote, counsel representing several of the limited partners wrote the attorney for the partnership in June and July, and questioned the authority of the partnership to enter into the sale. The letters did not specify the grounds for raising the issue. In response, counsel for the partnership indicated a willingness to meet to discuss the matter. He also obtained an opinion letter from outside counsel. Outside counsel concluded in his opinion letter that the general partners were authorized to go forward with the transaction. Horsham-BVI was given a copy of the opinion letter as required under the terms of the sales contract. No further action was taken by the limited partners prior to the closing. There is no indication Horsham-BVI was contacted directly by the respondent-limited partners prior to the closing. The closing went forward on August 17, 1987. After the closing, the limited partners received checks for their pro rata share of the downpayment. All of the limited partners negotiated the checks.

After the closing, the respondent-limited partners originally filed suit against Martin, Padgett, and Padmar, Inc. in federal court in 1987. Discovery took place including the deposition of a representative of Horsham in April 1989. Shortly

---

[1] We do not know what personal property was owned by JES Ltd. as part of its assets.

thereafter, counsel for the respondent-limited partners sent a letter to Horsham demanding Horsham reconvey all assets it had acquired from JES Ltd. and turn over to JES Ltd. all proceeds received from resale of any of those assets. This was the first direct notification from the limited partners to Horsham that they questioned the authority for the sale. Subsequently, the limited partners dismissed the federal court suit and filed this action in state court in 1989 against the general partners, Padmar, Inc., and Horsham. In their first cause of action against Horsham the respondents seek recision of the transaction based upon lack of authority of the general partners to sell the assets. By their second cause of action against the general partners only, the respondents allege the sale was without authority and seek damages measured by the amount they claim the fair market value of the assets sold to Horsham exceeds the sale price. The respondents also alleged other causes of action against the general partners but those claims were not considered by the trial court except as to the finding of lack of authority to sell the assets of the partnership.

## II.

### (A)

A motion for summary judgment is appropriately granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue of material fact exists and the movant is entitled to judgement as a matter of law. Rule 56(c), SCRCP; *LaMotte v. Punch Line of Columbia Inc.*, 296 S.C. 66, 370 S.E. (2d) 711 (1988). Additionally, the grant of summary judgment is proper only in those cases where it is clear further inquiry into the facts is not desirable to clarify the application of the law to the facts presented. See *Smith v. S.C. Dep't of Highways*, 296 S.C. 11, 370 S.E. (2d) 101 (Ct. App. 1988). All inferences from the facts must be viewed in the light most favorable to the opposing party. *Eagle Constr. Co., Inc. v. Richland Constr. Co., Inc.*, 264 S.C. 71, 212 S.E. (2d) 580 (1975).

The limited partners alleged the general partners lacked authority to consummate the sale of the real property because the sale made it impossible to carry on the ordinary business of the partnership and the general partners did not obtain the

consent of all the limited partners under Section 8.03(b) of the limited partnership agreement. In their answers, the general partners and Horsham alleged a sufficient number of limited partners agreed to the transaction by virtue of Section 8.03(f).

The trial court granted partial summary judgment to the limited partners holding the general partners did not have actual authority to sell the partnership assets to Horsham. This holding was based upon the court's interpretation of the limited partnership agreement. The trial court held alternatively (1) "at least a two-thirds vote was required to authorize the transaction" under Article 17 of the limited partnership agreement and (2) the general partners' authority also failed because all of the partnership assets were sold and all of the limited partners did not consent under Section 8.03(b). The general partners and Horsham assert the trial court erred in its interpretation of the partnership agreement. They contend Section 8.03(f) of the agreement is the applicable provision and it authorizes the sale with the consent of more than one-half of the then outstanding partnership interests. The question on appeal is the correct interpretation of the limited partnership agreement.

Under Section 8.02 of the agreement, the general partners have the specific rights and powers on behalf of the partnership to "acquire, hold and dispose of any real property. . . ." However, Section 8.03 places certain limits on the authority of the general partners. Section 8.03 states, in part, as follows:

> The General Partners shall have all the rights and powers and be subject to all the restrictions and liabilities of a Partner in a Partnership without Limited Partners, except that the General Partners shall have no authority without written consent of *all Limited Partners* to:
>
>       \*    \*    \*    \*    \*    \*
>
> (b) do any act which would make it impossible to carry on the ordinary business of the Partnership (provided, however, that the sale of all or a major portion of the Patewood Property in accordance with the terms of this Agreement shall not be deemed to be an act making it impossible for the Partnership to carry on its ordinary business);
>
>       \*    \*    \*    \*    \*    \*

(f) sell substantially all or a major portion of the Partnership Property at a single sale which takes place at one time, or from time to time, or in multiple sales at one time, or within a twelve-month period, *without the prior written consent of Partners holding more than one-half (1/2) of the then outstanding Partnership Interests.* (emphasis added)

As noted previously, the trial court relied, at least in part, on a section of the agreement which none of the parties asserted in their pleadings. The trial court found Article 17 of the agreement relating to amendments applicable and that article required a two-thirds vote in order for the agreement to be amended.

We disagree with the trial court's conclusion that Article 17 of the limited partnership agreement is applicable to this matter. That article is titled "Amendments, Voting, [and] Meetings." Read in context with the rest of the agreement, the article sets forth a procedure in which amendments to the partnership agreement may be proposed and adopted while the partnership is conducting business and operating as an on-going entity. Article 17 calls for a two-thirds vote of the outstanding partnership interests to amend the partnership agreement when "there is a change in the character of the business of the partnership" and when "a time is fixed for dissolution of the partnership or the return of contributions and such time has not been specified in the agreement." The trial court relied upon these two subsections to hold a two-thirds vote was required to approve the sale of the partnership assets. This was error. As noted above, the "change in character of the business" provision contemplates a situation where the partnership changes the focus of its business from one type of business to another and continues to operate as a partnership. That is not the case here.

The provision in Article 17 dealing with changing of the time for dissolution is also not applicable because Section 1.04 of Article 1 gives a specific date for dissolution unless the partnership is sooner dissolved under Article 13. Here, dissolution under Article 13 occurred by virtue of the sale. Therefore, there is no need for an amendment pursuant to Article 17 because a specific section of the agreement already covers the situation. Therefore, we conclude Article 17 of the part-

nership agreement does not apply and the two-thirds vote requirement is inapplicable.

The issue of actual authority for the sale comes down to the question of whether the partnership agreement required a simple majority vote or the consent of all limited partners. This issue involves the interpretation of Sections 8.02 and 8.03 of Article 8 and Article 13.

We first note the Solicitation Statement sent to the ■ limited partners stated the proposed sale was of "substantially all of the assets" of the partnership. The proposed contract of sale stated it was an agreement to purchase "all of the assets of [JES Ltd.] of every nature and kind without limitation." The Solicitation Statement also noted that by the sale of "substantially all" of the assets of the partnership at one time the partnership would dissolve. This Statement refers to Article 13 of the partnership agreement. Article 13, Section 13.01 provides, in part, as follows:

> The Partnership will dissolve upon the happening of any of the following events:
>
> \*   \*   \*   \*   \*   \*
>
> (iv) the sale or other disposition *at one time of all or substantially all of the assets* of the partnership existing at the time of such sale. (emphasis added)

Everyone involved in this matter understood that all of the partnership's assets would be sold and the effect of the sale would be a dissolution of the partnership. Therefore, the real question is what vote is required to dissolve the partnership by the sale at one time of all of its assets. As we view the partnership agreement, this matter is governed specifically by Section 8.03(f)[2] as opposed to Section 8.03(b).[3] Section 8.03(f)

---

[2] Section 8.03(f) states that the general partners shall not have the power to "sell *substantially all* or a major portion of the partnership Property *at a single sale which takes place at one time,* or from time to time, or in multiple sales at one time, or within a twelve month period, without the prior written consent of the partners holding more than one-half (¹/₂) of the then outstanding partnership interests."

[3] Section 8.03(b) states the general partners shall not have the power without the written consent of all limited partners to "do any act which would make it impossible to carry on the ordinary business of the partnership (provided, however, that the sale of all or a major portion of the Patewood Property in accordance with the terms of this Agreement shall not be deemed to be an act making it impossible for the partnership to carry on its ordinary business)."

directly addresses a sale of partnership property and is a limitation upon the broad power given to the general partners in Section 8.02(a) to "acquire, hold and dispose of any real property. . . ." Reading the partnership agreement in context and harmonizing Articles 8 and 13, a dissolution of the partnership occurs when either "all" or "substantially all" of the assets of the partnership is sold at one time.[4] The dissolution article makes no practical distinction between "all" and "substantially all." A sale of either "all" or "substantially all" leads to dissolution. Since "substantially all" of the partnership's property may be sold at one time upon written consent of a majority of the outstanding partnership interests, it follows that a simple majority vote may dissolve the partnership in this manner.

The limited partners assert Section 8.03(b) is the applicable provision because "all" of the partnership assets were sold and therefore it would be impossible to carry on the ordinary business of the partnership. As noted, the partnership agreement makes no practical distinction between the sale of "all" or "substantially all" of the partnership's assets at one time because both situations lead to dissolution of the partnership. it would be anomalous to interpret the partnership agreement to permit the sale of "substantially all" of the partnership's property by simple majority vote which results in a dissolution, yet require unanimous consent to sell "all" of the partnership's assets which also results in a dissolution.[5] Therefore, Articles 3, 8, and 13 can be harmonized by recognizing this matter involved the ultimate dissolution of the partnership. Dissolution is specifically authorized by the partnership agreement through the sale of "all or substantially all" of its assets at one time.

Having concluded Section 8.03(f) is the applicable provision of the partnership agreement, this court is not in a position to answer the question of whether the general partners had actual authority to sell the assets because of another issue in this case. One of the ballots was called into

---

[4] "Substantially all" has been variously defined as: (1) the antithesis of the phrase "a substantial part," *Employment Security Board v. Maryland Deliveries*, 204 Md. 533, 105 A. (2d) 240 (1954); (2) all but what should be disregarded under the *de minimis* rule, *Blue Ridge Lumber Products v. Nelson*, 213 F. (2d) 451 (2d Cir. 1954); and (3) all except a negligible minority interest, *Burnet v. Bank of Italy*, 46 F. (2d) 629 (9th Cir. 1931).

[5] No one has taken the position these Articles are ambiguous.

question by the limited partners. This ballot was altered by the limited partner submitting it.[6] He placed a condition on the sale which was not part of the original ballot. As we understand it, if this ballot is deemed to have been incorrectly counted as a "yes" vote then there would not be a majority vote in favor of the sale. The trial court did not rule on this issue. Therefore, the matter of the validity of this ballot and its effect on the issue of actual authority must be remanded to the trial court.

### (B)

In addition to the question of actual authority, the trial court interpreted Horsham's defense of "good faith reliance" as essentially a claim that the general partners had apparent authority to consummate the transaction. For several reasons the court concluded the doctrine of apparent authority did not apply as a matter of law. We affirm the trial court's decision on this issue but upon different grounds appearing in the record. Rule 220(c), SCACR.

■ In the principal and agent relationship, apparent authority is considered to be a power which a principal holds his agent out as possessing or permits him to exercise under such circumstances as to preclude a denial of its existence. *Beasley v. Kerr-McGee Chem. Corp. Inc.*, 273 S.C. 523, 257 S.E. (2d) 726 (1979). A third party may assert the apparent authority of the agent against the principal if the third party reasonably relied upon the indicia of authority and changed his position in reliance upon it. *Id.*

The concept of apparent authority is irrelevant to this case because the actual authority of the general partners was governed by the written terms of the limited partnership agreement. There was no other representation of authority. The question is whether the general partners had the actual authority to consummate the sale of the assets of the limited partnership under the limited partnership agreement. This matter must be resolved on remand as stated in Part II(A) of this opinion.

---

[6] Another limited partner testified in deposition he also originally submitted a conditional ballot but was advised by counsel for the partnership that a ballot containing conditions would be counted as a "no" vote. This limited partner then submitted a ballot without conditions in order to vote "yes."

## III.

The general partners and Horsham have also appealed from the trial court's order denying their motions for summary judgment. All parties filed motions for summary judgment. In addition to the question of authority for the sale, the cross-motions of the general partners and Horsham raised the issues of estoppel and ratification. Although an order denying summary judgment is not appealable, these issues are properly before this court because the question of whether the trial court erred in granting the motion of the limited partners for partial summary judgment is appealable. *Garret v. Snedigar*, 293 S.C. 176, 359 S.E. (2d) 283 (Ct. App. 1987) (see footnote 2 regarding appellate authority).

### (A)

The general partners argue the trial court erred in failing to grant them summary judgment based upon the defenses of estoppel and ratification. They argue that even if they did not have actual authority to sell the assets of the partnership their lack of authority is excused based upon these theories. We find the trial court erred in holding these defenses inapplicable as a matter of law but we do not agree with the general partners that they are accordingly entitled to summary judgment. We reverse and remand because further development of the facts is necessary to clarify application of the law on the issues of estoppel and ratification as they pertain to the general partners. See *Baughman v. AT&T Nassau Metals Corp.*, — S.C. —, 410 S.E. (2d) 537 (1991) (grant of summary judgment deemed to be premature); *Hyder v. Jones*, 271 S.C. 85, 245 S.E. (2d) 123 (1978).

The essential elements of estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representation or conduct; and (4) prejudicial change of position as a result of such reliance. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E. (2d) 460 (1990). We believe issues of fact exist regarding the elements of this defense. The record indicates the limited partners received the Solicitation Statement along with a copy of the proposed contract of sale. The limited partners knew from these documents

the general partners were taking the position that only a majority vote was necessary to authorize the sale. The record also established some communication before closing between an attorney representing a group of limited partners and the attorney for the partnership. The facts need to be further developed concerning the content of this communication.[7] This information is relevant to the elements of representation and reliance upon that representation. It is also relevant to the element of prejudicial change of position. We take no position on the ultimate viability of the defense of estoppel but we do conclude it was inappropriate to determine the issue as a matter of law upon the record before the trial court.

Ratification is defined as the "express or implied adoption of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." *Lincoln v. Aetna Casualty & Sur. Co.*, 300 S.C. 188, 191, 386 S.E. (2d) 801, 803 (Ct. App. 1989). The elements of ratification are (1) acceptance by the principal of the benefits of the agent's acts, (2) full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement. *Id.* Again, we find further development of the facts is desirable to clarify the application of this theory to the facts at hand. The record indicates the general partners authorized a reduction of the purchase price by $200,000 at the closing. It is not clear when the limited partner group knew this fact. Also, there is a question as to the reasonableness of the actions of the limited partners after the closing. They accepted the checks upon the cash distribution. They waited several months before challenging the action of the general partners in federal court. Whether their actions were reasonable to repudiate the conduct of the general partners or instead indicate ratification cannot be conclusively determined as a matter of law on this record. See *Foxworth v. Murchison Nat'l Bank*, 136 S.C. 458, 134 S.E. 428 (1926).

We reverse and remand the issues of estoppel and ratification as they pertain to the general partners.

---

[7] The limited partners take the position the general partners must show that a majority of the total limited partners had the requisite knowledge of the true facts before estoppel may be sustained. We disagree. The knowledge requirement relates to the respondent-limited partners only since they are the ones who appellants claim are estopped.

(B)

The trial court denied Horsham's motion for summary judgment. In the written motion Horsham asserted there was no "statutory or other authority under South Carolina law which would support an order compelling Horsham Properties Limited to reconvey to the [p]laintiffs." The statement of the case indicates the motion was based on the grounds of (1) estoppel, (2) apparent authority, and (3) actual authority. The trial court ruled against Horsham on the issues of authority and held the estoppel defense raised novel legal questions. On appeal Horsham argues the trial court erred because even if the sale was not authorized (1) the limited partners are estopped to assert their claim against Horsham and (2) the limited partners are not entitled to rescission as a matter of law.

The closing of the transaction took place on August 17, 1987. Before closing, some of the limited partners had communicated various concerns to the attorney for the partnership but none communicated directly with Horsham. Horsham received an opinion letter from outside counsel indicating the requisite authority for the sale had been obtained from the limited partners. Following the closing, the cash portion of the purchase price was distributed to all the limited partners. A substantial portion of the properties purchased by Horsham was subsequently resold and all of the financing assumed by Horsham was restructured. Horsham also assumed the responsibility for managing and leasing the office buildings which were part of the developed property. The first direct notification Horsham received that certain limited partners questioned the authority for the sale was a letter of April 21, 1989, which demanded Horsham reconvey all assets it had acquired and turn over all proceeds received from resale of any of those assets. The record contains the affidavit of the vice-president of Horsham. In the affidavit he gives further details of the financial aspects of the purchase and identifies additional actions Horsham has taken with regards to the property between 1987 and 1989. The record does not contain contrary evidence presented by the limited partners other than a general assertion of willingness to tender the consideration received.

The trial court held the estoppel defense raised a novel legal issue and the court declined to rule on it. We find the

trial court erred in failing to grant summary judgment to Horsham upon the defense of estoppel.

The successful assertion of an estoppel defense requires a showing that the party asserting the defense was without knowledge or any means of knowledge of facts upon which he predicates a claim of estoppel. *Freeman v. Fisher,* 288 S.C. 192, 341 S.E. (2d) 136 (1986).

The affidavit of the partnership's attorney indicated he orally notified Horsham's counsel of the existence of the communication from the respondents' counsel prior to the closing. The respondents argue this notification along with the opinion from outside counsel were sufficient to put Horsham on at least inquiry notice that the authority of the general partners was being questioned.[8] They argue further inquiry by Horsham into the facts would have revealed that they, through their attorney, requested a meeting with the general partners to discuss the authority issue and they had insisted the sale not take place until after the meeting with the general partners. Further inquiry would have also revealed the partnership counsel's reply to respondents' counsel to the effect that he had no authority to delay the closing regardless of a potential dispute as to "the general partners' compensation."

We think the respondents' conduct of doing nothing to halt the closing,[9] together with their subsequent conduct, stops them from raising the issue at this time. See *Central Prod. Credit Ass'n v. Page,* 268 S.C. 1, 231 S.E. (2d) 210 (1977) (estoppel requires a material prejudice to party asserting the defense resulting from an act of neglect of party against whom it is asserted).

Having taken the position the sale was unauthorized but having permitted the dispute to be characterized as one involving general partners' compensation, we think it was incumbent upon the respondents to have at least communicated

---

[8] A letter from respondents' counsel to the attorney for the partnership dated July 22, 1987, stated *inter alia:* "I seriously question the authority of the partnership to transfer this property using the procedure and acts that were taken in the early part of this year." No specific mention was made of the vote. A previous letter had indicated some of the limited partners were concerned about the terms of the sale and the compensation to the general partners.

[9] The simple act of filing a *lis pendens* would have effectively manifested their position.

their position to Horsham. Instead of taking positive action to halt the sale or even raise the issue with Horsham in a timely manner, the respondents sat back, received, and cashed their checks for their respective shares of the cash portion of the purchase price. They also allowed Horsham to (1) assume full liability and obtain the release of J.E. Sirrine Company from loans of approximately $11,500,000; (2) assume liability and release the partnership from a loan of $3,250,000; (3) assume full responsibility for management, leasing, and maintenance of the office buildings included in the assets conveyed; (4) notify all tenants in the office buildings that Horsham would be the new landlord under their leases; (5) transfer all utility contracts and other service contracts into Horsham's name and pay all utility charges subsequent to the closing; (6) sell a substantial portion of the properties purchased; and (7) restructure all of the financing on the properties.

The conduct of the respondents misled Horsham as to their true intentions and Horsham relied upon their conduct to its detriment in entering into certain irreversible business and financial arrangements both before and after the closing. See *Bilton v. Best Western Royal Motor Lodge,* 282 S.C. 634, 321 S.E. (2d) 63 (Ct. App. 1984) (the essence of equitable estoppel is that the party seeking to invoke it must have been misled to his injury).

In conclusion, we reverse and remand to the trial court the issue of actual authority. The trial court should specifically consider the question of the challenged ballot. We affirm the trial court on the issue of apparent authority for the reasons stated in this opinion. We reverse and remand the issues of estoppel and ratification as raised by the general partners for the reasons stated. We reverse the decision of the trial court on the defense of estoppel raised by Horsham and remand for entry of judgment in favor of Horsham.

Affirmed in part, reversed in part, and remanded.

SHAW and BELL, JJ., concur.