481 S.E.2d 706

Julian Harris SHELTON, Petitioner,

v.

OSCAR MAYER FOODS CORPORATION, d/b/a Louis Rich, a wholly owned subsidiary of Phillip Morris Companies, Inc., Barton Protective Services, Inc., and William Brown, Defendants.

of which Oscar Mayer Foods Corporation, d/b/a Louis Rich, a wholly owned subsidiary of Phillip Morris companies, Inc., is Respondent.

No. 24580.

Supreme Court of South Carolina.

Heard Dec. 5, 1996.

Decided Feb. 18, 1997.

---

C. Richard Kelly, Columbia; and Samuel M. Price, Jr., Newberry, for petitioner.

Thomas A. Bright, of Haynesworth, Baldwin, Johnson and Greaves, P.A., Greenville, for respondent.

Harold W. Funderburk, Jr., Columbia, for amicus curiae SC Employment Security Commission.

BURNETT, Justice:

Shelton claims the trial court and the Court of Appeals erred in holding the factual issues determined during a con-

tested hearing conducted by the South Carolina Employment Security Commission (ESC) did not preclude relitigation of those issues in a subsequent wrongful discharge suit. We affirm.

## FACTS

Shelton was employed at the Louis Rich processing plant in Newberry, South Carolina. In 1987, William Brown, a security guard, told Louis Rich management he had observed Shelton and a co-worker smoking marijuana in the co-worker's van in the Louis Rich parking lot. Allegedly, Louis Rich discharged Shelton without further investigation.

After termination, Shelton sought unemployment benefits from the ESC. At the ESC hearing, testimony about the incident was presented by Shelton, the co-worker, and the security guard. The hearing officer found Shelton was discharged without cause and entitled to benefits. Louis Rich did not appeal this decision.

Subsequently, Shelton brought a wrongful termination of employment suit. Shelton claimed Louis Rich failed to ensure, as its handbook provided, that its rules governing employee conduct would be enforced fairly and equally with regard to all employees. Shelton alleged several causes of action against Louis Rich including breach of contract, breach of contract accompanied by a fraudulent act, fraudulent misrepresentation, and breach of covenant of good faith and fair dealing. Shelton moved for partial summary judgment on the ground Louis Rich was collaterally estopped from litigating whether Shelton was discharged for smoking marijuana because that factual determination had been made in the ESC decision. Judge T.L. Hughston, Jr. denied this motion. At trial, Judge James W. Johnson, Jr. granted Louis Rich's motion for a directed verdict on the breach of contract claim. All other claims had been previously disposed of on motions to dismiss or for summary judgment by either Judge Johnson or Judge Hughston.

Shelton appealed. Initially, the Court of Appeals reversed on the collateral estoppel issue. *Shelton v. Oscar Mayer Foods Corp.*, Op. No. 2312 (S.C.Ct.App. filed February 27, 1995) (Davis Adv.Sh. No. 5 at 34). However, upon rehearing,

the Court of Appeals upheld the determination of the trial court that Louis Rich should not be collaterally estopped from relitigating issues decided in a previous ESC hearing. *Shelton v. Oscar Mayer Foods Corp.*, 319 S.C. 81, 459 S.E.2d 851 (1995). The Court of Appeals in its ruling relied on the policy underlying the purpose of the ESC and case law from other jurisdictions. We granted certiorari.

## ISSUE

Did the trial court and Court of Appeals err in holding collateral estoppel does not apply to the factual findings of an ESC hearing?

## DISCUSSION

Shelton argues Louis Rich was collaterally estopped from relitigating a factual issue decided during a contested hearing conducted by the ESC to determine whether Louis Rich discharged Shelton for cause. We disagree.

 Collateral estoppel or issue preclusion prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action. *Beall v. Doe*, 281 S.C. 363, 369 n. 1, 315 S.E.2d 186, 189 n. 1 (Ct.App.1984). The issue of whether collateral estoppel applies to rulings of the ESC has never been directly addressed by an appellate court of this state prior to *Shelton, supra.* However, this Court has held an administrative agency's findings of fact may have preclusive effect in a subsequent civil suit. *See Bennett v. South Carolina Dep't of Corrections*, 305 S.C. 310, 408 S.E.2d 230 (1991).[1]

---

1. *Bennett* dealt with the application of collateral estoppel to a proceeding before the State Employee Grievance Committee. Bennett filed a complaint with the grievance committee and the grievance committee ruled in favor of the employer. Instead of appealing this decision through the proper administrative channels, Bennett filed a civil suit alleging he was discharged in retaliation for filing a workers' compensation claim. This Court held the circuit court properly granted the employer's summary judgment motion because the issues in Bennett's civil claim were identical to the issues presented to and ruled upon by the grievance committee. Bennett had abandoned any opportunity for a ruling on these issues in his favor when he failed to .appeal the grievance committee's findings.

In the abstract, there is no legitimate reason to permit a defendant who has already thoroughly and vigorously litigated an issue and lost the opportunity to relitigate the identical question.... The public interest demands an end to the litigation of the same issue. Principles of finality, certainty, and the proper administration of justice suggest that a decision once rendered should stand unless some compelling countervailing consideration necessitates relitigation.

*Beall,* 281 S.C. at 370, 315 S.E.2d at 190 (quoting *Hossler v. Barry,* 403 A.2d 762, 769 (Me.1979)).

 The purpose of the ESC hearings is to quickly provide benefits to persons becoming unemployed through no fault of their own. S.C.Code Ann. § 41–27–20 (1986). The legislature intended to minimize procedural hurdles before the ESC so as to enable unemployed claimants to obtain prompt decisions regarding entitlement to unemployment benefits from the ESC. The purposes of the ESC are in conflict with the doctrine of collateral estoppel; therefore, public policy dictates the findings made during an ESC hearing should not receive collateral estoppel effect.

 Further, the narrow issue the ESC decides is simply whether the claimant is qualified to receive employment benefits. *See* S.C.Code Ann. § 41–35–120. Thus, the jurisdiction of the ESC is limited. By focusing on a narrow issue, the ESC is able to expeditiously determine whether an employee is entitled to unemployment benefits. This serves the purpose of providing benefits quickly to employees who are unemployed through no fault of their own. To apply collateral estoppel to ESC decisions would result in ESC hearings becoming forums for employers and employees to engage in lengthy civil litigation of claims relating to an employee's discharge. Thus, the intent underlying the employment security law would be frustrated.

---

*Bennett* is distinguishable from the matter, *subjudice.* State employees must bring complaints before the grievance committee prior to seeking judicial review; therefore, the hearing before the grievance committee is necessarily more in the nature of a full evidentiary hearing. An ESC hearing only determines the narrow issue of whether an employee may receive unemployment benefits.

■ Employers normally are not compelled to intensely contest ESC hearings because the stakes are not great in such hearings. An ESC hearing only determines whether an employee was discharged for cause and thus disqualified from receiving unemployment benefits. A wrongful termination lawsuit determines whether the employer wrongfully discharged the employee and seeks to place blame on the employer. The damages available in a wrongful discharge lawsuit are much greater than unemployment benefits. Thus, an employer has more incentive to fully contest a civil suit.

Further, employees are often unrepresented in ESC hearings. If collateral estoppel applied, an unwary employee could unknowingly forfeit an opportunity to litigate significant issues in a subsequent civil action.

Other jurisdictions considering this issue have found collateral estoppel does not apply to ESC findings. *See Salida School Dist. R–32–J v. Morrison,* 732 P.2d 1160 (Colo.1987) (holding collateral estoppel should not apply to ESC findings because "[i]f findings entered at an unemployment compensation hearing may be used to establish the employer's liability for unlawful discharge in a subsequent lawsuit, the employer would have a strong incentive to use its superior resources consistently to oppose a discharged employee's claim for unemployment benefits. Issues presented to the [ESC] will be contested strongly, and the hearings will become lengthy and more detailed, and will no longer be suited to the prompt resolution of unemployment compensation claims."); *see also, Kelley v. TYK Refractories Co.,* 860 F.2d 1188 (3d Cir.1988) (factual finding of unemployment compensation board that employee who voluntarily quit was not entitled to collateral estoppel effect in employee's civil suit in light of differing policies underlying the unemployment compensation scheme and the civil rights statute); *Caras v. Family First Credit Union,* 688 F.Supp. 586 (D.Utah 1988) (finding the employer did not have an incentive to fully and fairly litigate the issue because the adverse effects to employer would be payment of unemployment compensation, a minimal amount compared to the amount in controversy in wrongful termination suit); *Board of Educ. of Covington v. Gray,* 806 S.W.2d 400 (Ky.Ct. App.1991) (finding offensive collateral estoppel inappropriate because of the profound differences between unemployment

proceedings and those of courts of law including the unemployment system gives neither party a full opportunity to litigate issues since hearings are usually set up quickly, are informal, and function under relaxed rules of evidence); *Shovelin v. Central New Mexico Elec. Co-op., Inc.,* 115 N.M. 293, 850 P.2d 996 (1993) (holding the trial court did not err in refusing to give preclusive effect to findings of the Employment Security Department); *Case v. Lower Saucon Township,* 654 A.2d 57 (Pa.1995) (finding of unemployment compensation board that employee was not discharged for wilful misconduct did not preclude employer from defending employee's discharge). We find these opinions persuasive.

Therefore, because application of the doctrine of collateral estoppel would frustrate the purposes of the ESC, findings of fact made during an ESC hearing will not be given preclusive effect in any subsequent litigation between the employer and employee.

**AFFIRMED.**

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.