491 S.E.2d 698

**David M. PRESCOTT, Appellant,**

v.

**FARMERS TELEPHONE COOPERATIVE, INC., Respondent.**

**No. 2714.**

Court of Appeals of South Carolina.

Heard June 3, 1997.

Decided Aug. 18, 1997.

Rehearing Denied Oct. 23, 1997.

---

380

382

J. Edward Bell, III, of Bell & Moore, Sumter, for appellant.

William E. DuRant, Jr., and Michael M. Jordan, both of Schwartz, McLeod, DuRant & Burchstead, Sumter, for respondent.

CURETON, Judge:

In this action, Prescott sued his former employer, Farmer's Telephone Cooperative, Inc. (FTC), for unlawful termination. Prescott appeals from the grant of summary judgment to FTC

on five of his six causes of action. We affirm in part, reverse in part and remand.

## I. FACTS

Prescott began working for FTC in 1972 as an inexperienced lineman. Over the years, Prescott was promoted through a number of different jobs until he became a splicer. Prescott testified without contradiction that three supervisors repeatedly told him during the period of his employment that "[a]s long as you did your job [and] kept your nose clean, you'd have a job right on." Prescott also believed the employee handbooks contained this promise as well.[1] Prescott testified he interpreted "keeping your nose clean" to mean "don't go out there and get into trouble and do things you're not supposed to be doing," both at and outside of work.

In 1992, Prescott was assigned to work on a project near Bishopville in Lee County. After the Bishopville job was completed, Prescott was temporarily transferred to work under supervisor Ronnie Joye at the "Cain's Mill" or Pocalla jobsite. During the job, some of Prescott's co-workers reported that a section of spare cable was missing from where they had left it. A company official named Joe McCants then contacted Prescott and asked him to put his spare cable into the company's scrap bin. Prescott testified he did so, and also threw away a quantity of insulating sheath that had come off some of the cable.

A few days later, FTC officials commenced an investigation due to missing cable from both the Bishopville and Pocalla job sites. The officials evidently used "sequency markers" printed on the side of the cable to determine that some of Prescott's spare cable was missing from the scrap bin. District Manager Dent Adams then questioned Prescott, and suspended him pending an investigation. A week later, company officials called Prescott to a meeting and informed him they were terminating him for "lying." Pursuant to instruction,

---

1. Prescott testified he got his first handbook a few months after he started work in 1972. The only handbooks in the record, however, are from 1979, 1988 and 1991. The handbooks do not expressly contain such a promise.

Prescott appealed the decision progressively through company officials until the General Manager affirmed the decision.

Prescott denied taking any cable, and testified that the cable was in the scrap bin for at least a week before Adams questioned him about it. He stated that it was common practice for splicers who needed odd pieces of cable to get them from the scrap bin. Further, while three of Prescott's co-workers did admit to stealing cable from the Bishopville jobsite, they did not implicate Prescott. Finally, Prescott also testified that a contractor refused to hire him after FTC told the contractor that it would rather Prescott not be hired for any jobs involving FTC.

Prescott filed suit, alleging breach of employment agreement, breach of the implied duty of good faith and fair dealing, defamation, intentional interference with economic relationship, promissory estoppel, and sought specific performance of his employment contract. On a motion for reconsideration, the trial court granted summary judgment to FTC on all claims except the defamation claim. Prescott appeals.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cafe Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). In ruling on a motion for summary judgment, the evidence and the inferences should be viewed in the light most favorable to the nonmoving party. *Id.*

## III. BREACH OF CONTRACT

Prescott first contends the trial court erred in granting summary judgment because material questions of fact exist as to whether FTC breached an employment contract. Prescott points to both the provisions in the employee handbook and the oral representations from his supervisors as altering at-will employment status. The trial judge ruled that the provisions in the handbook did not create an employment contract because they neither addressed duration of employment. nor termination. The trial judge further ruled the oral assurances

did not set a definite duration for employment so as to alter Prescott's indefinite at-will employment.

We affirm the trial court's ruling as to the handbook because we can discern no evidence that FTC breached any of its provisions, even assuming the handbook altered at-will status and created an employment contract. We reverse the grant of summary judgment on breach of contract, however, because a genuine issue of material fact exists as to whether FTC's oral statements altered Prescott's at-will status to employment that could only be terminated for cause.

## A. General Law

A contract for permanent employment of indefinite duration, which is unsupported by any other consideration than the respective obligations to perform services and pay wages, is terminable at the will of either party. *Satterfield v. Lockheed Missiles and Space Co.*, 617 F.Supp. 1359 (D.S.C. 1985) (citing various South Carolina cases). Employment at will results from agreements which have "no additional expression of duration." *Id.* (citing *Orsini v. Trojan Steel Corp.*, 219 S.C. 272, 64 S.E.2d 878 (1951)). Of course, at-will employment may be terminated at any time, for any reason, or for no reason at all. *Satterfield*, 617 F.Supp. at 1361 (citing various South Carolina cases).

However, an employer may modify its workers' at-will status through written handbooks and oral assurances. *See, e.g. Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987) (*Small I*). While an employer may insert a conspicuous disclaimer into a handbook which states that the policies contained within will not alter at-will status, an employer may not publish a policy with mandatory language, orally assure the employees that the policy will be followed, and then treat the promise as illusory. *Id. See also Kumpf v. United Tel. Co.*, 311 S.C. 533, 429 S.E.2d 869 (Ct.App.1993). The question is for the fact finder if a handbook and other evidence creates conflicting inferences as to whether the employer altered the employee's at-will status. *Small I*, 292 S.C. at 483, 357 S.E.2d at 454; *Kumpf*, 311 S.C. at 536, 429 S.E.2d at 871.

## B. Employee Handbook

In most of the South Carolina cases that have dealt with issues similar to those before us, our appellate courts have been faced with handbooks creating a multi-step termination procedure, coupled with mandatory written language and oral assurances that the policy would be followed. For example, in *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 453 S.E.2d 885 (1995), the court affirmed a master's finding that the employer breached an employment contract by failing to follow the handbook's procedure that one serious violation or three reprimands would result in termination. The court stated it was inconsequential that the handbook had not been distributed to employees because the plaintiff had been orally informed of the policy. *Id.* In *Fleming v. Borden, Inc.*, 316 S.C. 452, 460, 450 S.E.2d 589, 594 (1994), the court affirmed the submission to the jury of the existence of an employment contract from a handbook which contained termination provisions. In *Leahy v. Starflo Corp.*, 314 S.C. 546, 431 S.E.2d 567 (1993), the court held that a four-step disciplinary procedure, posted on bulletin boards accessible to employees, created a contractual obligation which altered the at-will status. In *Small I*, the court affirmed a jury verdict that the employer created an employment contract with a handbook, and then breached it by failing to follow the four-step termination procedure. 292 S.C. 481, 357 S.E.2d 452. Finally, the court held in *Bookman v. Shakespeare Co.*, 314 S.C. 146, 442 S.E.2d 183 (Ct.App.1994), *cert. denied,* (S.C. July 14, 1994), that a "Sexual Harassment Policy" document limited the employee's at-will status only to the extent the employer could not fire in retaliation for filing a sexual harassment claim.

In the present case, the relevant policy provisions in the 1979 handbook read as follows:

### COMPANY RULES AND REGULATIONS

It is the policy of this company to enforce and establish from time to time reasonable rules that are necessary to facilitate efficient operation and to protect company employees and company property. Violation of the rules listed will subject an employee to reprimand and/or discharge. The rules listed do not restrict disciplinary action from being

taken on other matters not specifically covered in formal policy.

\* \* \* \* \* \*

3. Stealing private or company property

\* \* \* \* \* \*

### EMPLOYEE RELATIONS (Grievances)

All employees have the right to receive a reasonable answer to any problem, misunderstanding or complaint that he or she may have. Any question should first be discussed with the employee's immediate supervisor. If the problem cannot be resolved at the immediate supervisory level, both employees (subordinate or supervisor), within a reasonable length of time will arrange a meeting with the department head to obtain a solution to the problem. The department head will have the opportunity to involve our Personnel Manager in trying to arrive at a satisfactory solution.

If all avenues are exhausted, the employee has a right to present his problem to the General Manager without any fear of reprisal. A final decision will be made by the General Manager after consultation with *all* involved employees. The General Manager's decision will be final unless the employee seeks an audience with the Board of Directors (which will be granted) or files a grievance with a State or Federal agency.

The grievance provision in FTC's manual is unlike those discussed in the other appellate decisions, in that it is only a procedure for review of a decision already made, and not a mandatory process before termination can occur. The "Rules and Regulations" provision similarly does not set forth procedures for termination, but merely lists conduct that will subject the employee to some sort of disciplinary action. Neither provision can be read as altering Prescott's at-will status by requiring cause in order to terminate.

The trial court ruled that the handbook in this case paralleled *Epps v. Clarendon County*, 304 S.C. 424, 405 S.E.2d 386 (1991), in that the grievance provision does not contain "language such that would inhibit [FTC's] right to discharge [Prescott]." As noted before, we agree with this conclusion. However, this does not address the right of a terminated

employee to receive the review set forth in the grievance provision. Assuming without deciding that the review procedure was contractually mandated, we find no evidence that FTC committed a breach by failing to follow the procedure.

Prescott's own testimony indicates that his termination was reviewed progressively by company officials. First, then District Manager Dent Adams laid Prescott off pending investigation. A week later, Adams, Adams' future replacement Joe Scruggs, Prescott's immediate supervisor Charlie Merchant, and Personnel Manager Nicky Nixsen met with Prescott and informed him he was terminated. Later that week, Prescott wrote a letter to the Operations Manager Johnny McDaniel, who reviewed the situation and upheld the termination in writing. Prescott then wrote to FTC's General Manager, Aubrey Judy, who also informed Prescott in writing that he would not reverse the termination decision. Prescott then ran into Judy a month later and asked him to again review the problem. Judy told him that "if you didn't do anything and they can't prove to me that you done anything we'll work things out." A week later Prescott received a call from Curtis Kennedy informing him that Judy again upheld the termination. The affidavit of Adams states that Prescott "was afforded an opportunity to file a grievance and seek a review of his termination in keeping with the established grievance procedure."

Prescott contends FTC did not follow the grievance procedure because it did not consult with "*all* involved employees." He states in his affidavit that his supervisor Charlie Merchant and "other employees who knew me well ... would have assured the investigators that they did not believe I was involved in the theft." However, Prescott himself testified Charlie Merchant was at the meeting when he was terminated. We cannot perceive any reason why Merchant would have been at the meeting if he was not "consulted." In any event, Prescott testified that his supervisor at the Pocalla jobsite was Ronnie Joye, not Charlie Merchant. We find that FTC substantially, if not completely, complied with the procedure by consulting with "*all* involved employees" and allowing Prescott progressive stages of review by company officials. The handbook provisions do not provide a genuine issue of material fact because they were not breached. *Cf. Cook v. South Carolina*

*Dept. of Highways & Public Transp.*, 309 S.C. 179, 420 S.E.2d 847 (1992) (no due process violation in termination of highway patrolman because supervisors' actions were consistent with provisions of the policy manual); *Bookman*, 314 S.C. 146, 442 S.E.2d 183 (holding that even if the employer breached a promise to conduct a full investigation, the plaintiff's claim failed because she did not contend she was fired in retaliation for filing a sexual harassment claim); *Kumpf*, 311 S.C. at 538, 429 S.E.2d at 872 (finding a jury question as to breach).

### C. Oral Statements

An employer's oral promises may also become the basis for creation of a contract which limits a worker's at-will status. *Cf. Gaskins v. Firemen's Ins. Co.*, 206 S.C. 213, 216, 33 S.E.2d 498, 499 (1945) (noting, in the context of a bilateral contract of insurance, that "if the minds of the parties have met, . . . it does not matter whether the form of the contract is written or oral"). *See also Small I*, 292 S.C. at 484–86, 357 S.E.2d at 454–55 (discussing the unilateral contract principles generally applicable to employment contracts, and noting that the "jury can consider an employee handbook, along with other evidence"); 82 Am.Jur.2d *Wrongful Discharge* § 101 (1992). Again, if the existence of a contract is disputed and the evidence admits of more than one reasonable inference, the question is for the jury. *Kumpf*, 311 S.C. at 536, 429 S.E.2d at 871.

In the present case, Prescott claims his supervisors told him on many occasions that "as long as you did your job [and] kept your nose clean, you'd have a job right on." Conceivably, this statement can be read as a promise that Prescott would only be discharged for cause: either for (1) dereliction of duty, or (2) misconduct inside or outside of work. The trial judge, however, rejected Prescott's claim that the oral assurances created a contract by citing the rule that:

> [U]nder ordinary circumstances a contract to furnish employment permanently, *or so long as the employee's services shall be properly performed*, or for a similar indefinite period, is no more than an indefinite general hiring, terminable at the will of either party; and is, therefore, unenforceable as to its duration. (Emphasis added).

*Weber v. Perry*, 201 S.C. 8, 12, 21 S.E.2d 193, 194 (1942) (holding that the rule did not apply to an employee who gave

additional consideration beyond his services by abandoning an established business).[2] *See also Orsini v. Trojan Steel Corp.,* 219 S.C. at 277, 64 S.E.2d at 880 (1951) (rejecting a plaintiff's claim of breach of oral contract of permanent employment based in part upon the statement—"What do you give a damn? You have a lifetime job here."—said in response to the plaintiff's desire to give two weeks' notice to his old employer). In *Orsini,* the court stated:

> "[P]ermanent employment" means steady employment, a steady job, a position of some permanence, as contrasted with a temporary employment or a temporary job. Ordinarily, where there is no additional expression as to duration, a contract for permanent employment implies an indefinite general hiring, terminable at will.

219 S.C. at 277, 64 S.E.2d at 880.

Even if pursuant to an *Orsini* "durational" analysis Prescott was an employee at will, this does not end the inquiry, as an employer may otherwise alter at-will status. *See Small v. Springs Indus., Inc.,* 300 S.C. 481, 388 S.E.2d 808 (1990) (*Small II*). Moreover, the above emphasized portion of *Weber*'s articulation of this rule is inconsistent with *Small I* and its progeny. In accord with *Small I,* an employer can be bound by an "express or implied agreement that refers to employment pending the occurrence of some event, *such as the employer's dissatisfaction with the employee's services or some cause for termination.*" 27 Am.Jur.2d *Employment Relationship* § 34 (1996) (emphasis added). An employer can alter its right to discharge for no reason or any reason, through oral or written statements which constitute a contract to only discharge for cause. *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880, 901 (1980) (Ryan, J., concurring).[3] This is precisely the kind of agreement which

---

**2.** It has been noted that while the at-will doctrine is "cast in mutuality," it has all the "equality of the law which forbids the rich as well as the poor to sleep under bridges." *Ludwick v. This Minute of Carolina, Inc.,* 283 S.C. 149, 153 n. 3, 321 S.E.2d 618, 620 n. 3 (Ct.App.1984) (quoting Anatole France), *rev'd,* 287 S.C. 219, 221–22, 337 S.E.2d 213, 214 (1985) (also citing the same language).

**3.** Justice Ryan's concurring opinion in *Toussaint* was cited to support *Small I*'s discussion of the unilateral nature generally inherent in

altered the at-will status of the plaintiff in *Small I.* 292 S.C. at 483–84, 357 S.E.2d at 454 (stating that the jury properly determined: (1) whether the employer's policies and statements constituted a contract, and (2) whether the employer breached by failing to have a reasonable belief that Small committed a "serious offense," which under the policy was sufficient to avoid the four-step process and terminate immediately).

We would agree that casual oral remarks are rarely sufficient to alter at-will employment. In *Chastain v. Kelly–Springfield Tire Co.*, 733 F.2d 1479, 1484 (11th Cir.1984), which involved remarkably similar statements,[4] the Eleventh Circuit rejected the employee's claim of an oral offer of an employment contract and quoted *Brown v. Safeway Stores, Inc.*, 190 F.Supp. 295 (E.D.N.Y.1960), for the proposition that a "casual remark made at a meeting, [or] a phrase plucked out

---

employment contracts. *Small I,* 292 S.C. at 484–85, 357 S.E.2d at 454. In the same general discussion in *Toussaint,* Justice Ryan noted: "[W]e reject defendant's claim that the element of consideration, essential to the formation of a contract, limits the enforceability of the employer's promise to those instances in which the employee provides some consideration in addition to the services to be rendered." 292 N.W.2d at 900. This "additional consideration" rule is, of course, found in *Weber v. Perry,* 201 S.C. 8, 21 S.E.2d 193 (1942), and its progeny. Justice Ryan then proceeded to describe in *Toussaint* another exception to the rule that an indefinite hiring is always employment at will:

> The second exception to the general rule consists of those instances in which the employment agreement includes some "distinguishing feature[s] or provision[s]".... A classic example of this type modification of an indefinite hiring is the modern collective bargaining agreement in which there is often included a provision that an employee shall be discharged only for cause.

292 N.W.2d at 901. An example of such an agreement with unions is found in *Johnson v. American Ry. Express Co.,* 163 S.C. 191, 161 S.E. 473 (1931) (stating that an employer altered at-will status through an agreement that employees would not be terminated except for cause and after an investigation). Justice Ryan then concluded: "[T]he ... rule is not limited only by formalized collective bargaining agreements, *but is limited as well by ... simple oral contracts of hire in which the parties limit or restrict the employer's freedom to terminate ... at will." Toussaint,* 292 N.W.2d at 901 (emphasis added).

4. Employees were promised continued employment "[i]f we did our jobs, kept our noses clean, didn't make waves and not sell to Goodyear and Kelly accounts." *Chastain v. Kelly–Springfield Tire Co.,* 733 F.2d 1479, 1483 (11th Cir.1984).

of context, is too fragile a base on which to rest such a heavy obligation inherent in such a contract." *See also Rowe v. Montgomery Ward & Co.,* 437 Mich. 627, 473 N.W.2d 268, 273–75 (1991) (noting that "oral statements [creating a contract to terminate only for cause] ... must be clear and unequivocal to overcome the presumption of employment at will," and must be based on more than "an expression of an optimistic hope of a long relationship").[5] However, in the present case, we give all favorable inferences to Prescott.

---

5. In *Rowe,* the Michigan Supreme Court limited to some degree the "contract" prong of *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980). *Rowe* noted that there were instances "in which application of contract law [was] a transparent invitation to the factfinder to decide not what the 'contract' was, but what 'fairness' requires." 473 N.W.2d at 269. *Rowe* rejected the claim of an oral promise of just-cause employment raised by a department store worker who "stumbled" into the store and applied for a job. The worker based her claim on the supervisor's statement that "as long as I sold, I would have a job [at the store]." 473 N.W.2d at 274. The court first noted that the supervisor's statement was not made in response to any preemployment negotiations regarding job security. 473 N.W.2d at 274–75. The court then reasoned that the supervisor's statement could not be construed as an expression of intent to form a contract, but instead was only an emphasis on sales as the job's main priority. 473 N.W.2d at 275. Two dissenting jurists in *Rowe* argued that the failure to negotiate for job security did not distinguish *Rowe* from *Toussaint.* 473 N.W.2d at 305–06, 309. One of those dissenting jurists, then Chief Justice Cavanagh, authored *Rood v. General Dynamics Corp.,* 444 Mich. 107, 507 N.W.2d 591 (1993), which addressed the claims of two separate employees of two different companies. In the first case, the court rejected a claim of an oral contract for just-cause employment, because the employer's statements were only directed to the employee's concern that he might lose his job if the company discontinued its trucking function. 507 N.W.2d at 600–01. In the second case, the *Rood* court rejected a claim of an oral contract of just-cause employment from the employer's statements that the employee's "job was secure," and the employee was "a key player" and "one of the basic components of the organization." 507 N.W.2d at 605. The court noted that the statements either were made in response to an inquiry about whether the employer intended to terminate employees after it acquired another plant, or were simply expressions of a good performance review. 507 N.W.2d at 604–05.

We reiterate *Small I*'s expression of the generally unilateral nature of employment contracts. 292 S.C. at 484–85, 357 S.E.2d at 454. We also note that, unlike *Rowe* and *Rood,* there is no evidence in the record before us that would limit the context or the effect of the alleged statements of Prescott's supervisors. Moreover, the alleged statements here are more of a direct expression of just-cause employment.

Prescott testified his supervisors repeated the oral promises throughout his twenty years of employment, and this at least gives rise to a question for the jury. Just as an employer should not give written assurances that "are not worth the paper on which they are printed," an employer should not give oral assurances that are not worth the breath used to speak them. *Cf. Small I,* 292 S.C. at 485, 357 S.E.2d at 455.

In the 1988 amendment to the handbook, the disclaimer reads: "All employees have the right to terminate their employment at any time, with or without notice, and with or without reason. [FTC] reserves the same right." The 1991 "Drug Abuse and Drug Testing" policy contains language to the same effect. Prescott claimed his supervisors periodically discussed changes in the handbook, but that he only remembered discussion of changes in insurance benefits. Thus, a question of fact exists as to whether Prescott had actual notice of the disclaimer. If so, the factfinder must determine the disclaimer's effect on whether any oral promises altered Prescott's at-will status. *Cf. Fleming,* 316 S.C. at 463, 450 S.E.2d at 596.

If the fact finder finds a contract to terminate only for cause, he must determine whether the employer had a reasonable good faith belief that sufficient cause existed for termination. Employers cannot be expected to act as judges, so the test is not whether the employee actually committed misconduct, but whether the employer had a reasonable good faith belief that it had cause to terminate.[6] *Cf. Small I,* 292 S.C. at 483–84, 357 S.E.2d at 454. We hold that a genuine issue of material fact exists on the breach of contract claim as to the issues discussed above.[7]

---

6. We are not faced with a situation where economic cause is the reason for termination. *See Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 186 So. 699, 701 (1939) ("It was said that what they meant by a permanent employment was so long as defendant was engaged in the same nature of business and needed the service of such an employee, and plaintiff was able and willing to do it satisfactorily and gave no cause for his discharge [sic].") *Cf. Miller v. Schmid Labs., Inc.,* 307 S.C. 140, 414 S.E.2d 126 (1992).

7. The dissent argues that the promises in *Small I* were non-durational, while the alleged promise before us is durational. It concludes that *Small I* has no bearing on the present matter because the employer

## IV. IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

Prescott contends that the trial court erred in ruling the implied duty of good faith and fair dealing does not apply to employment contracts. We agree. *See Shelton v. Oscar Mayer Foods Corp.*, 319 S.C. 81, 459 S.E.2d 851 (Ct. App.1995), *aff'd*, 325 S.C. 248, 481 S.E.2d 706 (1997) (only granting certiorari on and addressing the issue of collateral estoppel effect from an Employment Security Commission decision). A genuine issue of material fact exists as to this implied duty if FTC altered Prescott's at-will status. We reverse the grant of summary judgment on this claim.

## V. INTENTIONAL INTERFERENCE WITH CONTRACT

Prescott next contends the trial court erred in granting summary judgment on his claim for intentional interference with contract. The court ruled that "there is no evidence that would be admissible at trial which could sustain [such] a cause of action." We affirm.

Intentional interference with contract requires three elements: (1) the defendant intentionally interfered with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, which (3) causes injury to the plaintiff. *Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 395 S.E.2d 179 (1990). When ruling on a motion for summary judgment, the circuit court must consider *all* of the documents and evidence *within the record*, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See Anthony v. Padmar, Inc.*, 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992); *Gilmore v. Ivey*, 290 S.C. 53, 348 S.E.2d 180 (Ct.App.1986). A genuine issue of fact can be created only by evidence which would be admissible at trial.

---

there issued and failed to follow a written four-step termination procedure. However, the employer in *Small I* essentially bound itself to refrain from firing Small absent cause, which could be created either through a series of four relatively minor infractions or one serious violation. Fundamentally, there is no difference between the promises in *Small I* and the alleged promise here, other than the levels of specificity of the promises as to when sufficient cause exists to fire.

*Hansen v. DHL Labs., Inc.*, 316 S.C. 505, 450 S.E.2d 624 (Ct.App.1994), *aff'd* 319 S.C. 79, 459 S.E.2d 850 (1995).

In the present case, Prescott alleged in his complaint that FTC informed a potential employer that Prescott could not work on jobs involving FTC. FTC denied this allegation in its answer, although it admitted that Prescott "was employed by a contractor who on occasion performed service for [FTC]." Prescott testified:

> I told [the contractor] that he would have to get with [FTC] and see if they would let me work with him on sensitive jobs containing [FTC], and so he therefore went to Mr. Joe Scruggs, which took Dent's place, and Joe told him no, he'd rather I not be involved with anything considered in with [FTC].

The affidavit from Personnel Manager Nixsen states, "... the undersigned is unaware of any statements regarding [Prescott] and/or his termination having been made by FTC employees (other than management directly involved in the investigation and termination)...."

Prescott argues that his testimony as to the contractor's statement is not hearsay because it contains the admission of a party-opponent, Scruggs. Rule 801(d)(2), SCRE. Even assuming Scruggs' statement to the contractor is such an admission, Prescott points to no exception applicable to the contractor's statement to him. The contractor's statement is an out-of-court statement offered for the truth of the matter asserted, namely, that "Joe Scruggs told me he'd rather Prescott not work on FTC jobs." Without this evidence, no genuine issue of material fact exists on this cause of action.

## VI. PROMISSORY ESTOPPEL

Prescott next contends that the trial judge erred in granting FTC summary judgment on the promissory estoppel claim. The judge ruled that there was no unambiguous promise as the oral statements were "vague oral remarks about job security." We affirm in result.

In South Carolina, the elements of promissory estoppel are:

(1) the presence of a promise unambiguous on its terms; (2) reasonable reliance upon the promise by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party who makes the promise; and (4) the party to whom the promise is made must sustain injury in reliance on the promise.

*Woods v. State,* 314 S.C. 501, 505, 431 S.E.2d 260, 263 (Ct.App. 1993). Assuming Prescott has shown he relied on FTC's oral promises, we discern no evidence of injury sustained by Prescott as a result of that reliance. Thus, we affirm the grant of summary judgment on promissory estoppel.[8]

## VII. CONCLUSION

We reverse the grant of summary judgment on the breach of contract claim. While the handbook provisions provide no basis for breach of contract as there was no genuine issue of fact as to breach, at the very least the following questions remain for the jury: (1) whether FTC altered Prescott's at-will status through oral statements, (2) whether Prescott had actual notice of the handbook disclaimers, and, if so, whether this affected the creation of an employment contract to terminate only for cause, and (3) if Prescott's status was altered, whether FTC had a reasonable good faith belief after adequate investigation that it had cause to terminate him.

We also reverse the grant of summary judgment on the claim based on the implied duty of good faith and fair dealing.

We affirm the grant of summary judgment on the intentional interference with contract and promissory estoppel claims.

Accordingly, the order of the trial court is

**AFFIRMED IN PART, REVERSED IN PART AND RE-MANDED.**

---

8. According to the unilateral contract principles generally applicable to employment contracts, the only further assent required to bind an employer to alteration of at-will status is the employee's performance of the services. *Cf. Fleming,* 316 S.C. at 460–64, 450 S.E.2d at 594–96; *Small I,* 292 S.C. at 484–85, 357 S.E.2d at 454. Promissory estoppel, however, always requires some reliance on the promise which leads to injury.

HEARN, J., concurs.

STILWELL, J., concurs and dissents in separate opinion.

STILWELL, Judge (concurring in part, dissenting in part):

Although I agree completely with the analysis in Parts II, III.A, III.B, V, and VI of the majority opinion, I disagree with Parts III.C and IV and do not believe there was evidence from which the jury could have inferred Prescott was anything but an at-will employee. I believe this case is controlled by the rule stated in *Orsini v. Trojan Steel Corp.*, 219 S.C. 272, 64 S.E.2d 878 (1951).

In *Orsini*, Orsini left one job in Atlanta for a similar position in Columbia based in part, Orsini testified, on the promise of "a lifetime job." Orsini testified that, approximately two weeks after beginning his new job, he borrowed a pickup truck from his employer for the purpose of driving to Savannah, Georgia, on some personal business. Orsini's new employer's manager testified Orsini had borrowed the truck to find a place to live in Columbia and was to report for work and return the truck Saturday morning. Upon Orsini's return from Savannah Monday morning, the manager informed him that he was letting him go. The jury returned a verdict for Orsini for $2,250 on his breach of contract claim.

The supreme court reversed the jury verdict. It held as a matter of law that Orsini's at-will employment status had not been altered by the promise, stating,

> The general rule is that under ordinary circumstances a contract to furnish employment permanently, *or so long as the employee's services shall be properly performed,* or for a similar indefinite period, is no more than an indefinite hiring, terminable at the will of either party, and is therefore unenforceable as to its duration.

*Id.* at 276, 64 S.E.2d at 879 (emphasis added). In the present case, the promise testified to by Prescott, that he would have continued employment "as long as [he] did [his] job [and] kept [his] nose clean," cannot be meaningfully distinguished from the promise contemplated by the rule handed down in *Orsini,* that at-will employment is not altered by promises of continued employment "so long as the employee's services shall be properly performed."

The majority nevertheless holds that "[e]ven if pursuant to an *Orsini* 'durational' analysis Prescott was an employee at will, this does not end the inquiry, as an employer may otherwise alter at-will status." The majority further holds that a jury could reasonably find that the promise altered Prescott's at-will status by finding he was promised he would be terminated only for cause. I disagree and believe that was the very issue that *Orsini* decided against the employee as a matter of law.[1]

I also disagree with the majority's assertion that *Small I* and *Small II* have any application to the facts of the present case. Although those cases provide an example of how an employer can alter an employee's at-will employment status with promises of a *non-durational* nature, here, the only promise Prescott claims his employer made was a *durational* one. In contrast to the present case, in the *Small* cases, there was evidence that the employer had issued and distributed an employee handbook that provided for a four-step procedure for firing employees, that the company later issued a bulletin to all employees setting forth in full the termination procedure, and that the company orally assured Small that the procedure would be followed. These cases, in my view, simply have no bearing on the issue of whether Prescott's employer's alleged promise that Prescott would be employed "*as long as* [he] did [his] job [and] kept [his] nose clean," could alter his at-will status.

Because I find this case is controlled by the law as stated in *Orsini* and because I agree with the analysis in the balance of the majority's opinion, I would affirm the trial court's grant of summary judgment on all claims.

---

**1.** The issue in *Orsini* was *not* whether Orsini was entitled to permanent employment *regardless of whether he performed capably.* Rather, the issue was whether the employer's promise of lifetime employment precluded the employer from firing Orsini *without just cause.* Therefore, I believe *Orsini* clearly stands for the proposition that a durational promise such as the one allegedly made in this case does not alter an employee's at-will status.