669 S.E.2d 628

**Kevin Wayne ARDIS (Deceased), Employee, Respondent,**

v.

**COMBINED INSURANCE COMPANY, Employer,
and Cambridge Integrated Services Group,
Inc., Carrier, Appellants.**

**No. 4441.**

Court of Appeals of South Carolina.

Heard Sept. 18, 2008.
Decided Oct. 14, 2008.
Rehearing Denied Dec. 19, 2008.

316

318

James H. Lichty, Weston Adams, III and Ashley B. Stratton, of Columbia, for Appellants.

William Ceth Land, of Manning, for Respondent.

GEATHERS, J.

In this Workers' Compensation action, Combined Insurance Company (Combined) appeals the circuit court's affirmance of an order of the Appellate Panel of the Workers' Compensation Commission (the Commission) granting a lump sum award and burial expenses to the beneficiaries of Kevin Ardis (Ardis). On appeal, Combined argues Mr. Ardis' death occurred outside the scope and course of his employment, thus precluding compensation under the South Carolina Workers' Compensation Act (the Act). We affirm.

## FACTS/PROCEDURAL HISTORY

At the time of Ardis' death, he was employed by Combined as an insurance sales representative. As an employee, Ardis attended a regional sales meeting from January 13–15, 2006, at the Holiday Inn in Marietta, Georgia. On Friday, January 13, Ardis and his girlfriend, Alicia Connor (Connor), drove approximately five hours from their hometown in Wedgefield, South Carolina to Marietta. On Friday evening, they checked into the Holiday Inn where the sales meeting was to take place the following day from 10:00 a.m. until 3:00 p.m.

Kevin Ristau (Ristau), a regional manager for Combined, testified his assistant booked Ardis' room at the Holiday Inn. Ristau also stated employees had the option of staying one or two nights at the hotel. Combined was responsible for paying

for Ardis' room on both Friday and Saturday nights.[1] Ristau stated he was aware that Ardis and one other employee of Combined were spending Saturday night at the hotel. While Ristau did not stay at the Holiday Inn, he testified that he stayed at another hotel in Atlanta on Saturday night in preparation for a trip on Sunday to Nashville, Tennessee.

The purpose of the sales meeting was to train employees for a new company incentive program. Several employees, including Ardis, also received sales awards. Combined did not dispute that Ardis' presence in Marietta was directly related to and caused by Ardis' employment with Combined.

Because the drive back to Wedgefield was approximately five hours, Ardis and Connor chose to spend Saturday night at the hotel and drive back the next morning. After the meeting concluded on Saturday, Connor testified she and Ardis shopped, bowled, and ate supper before returning to the hotel between 11:30 p.m. and 12:00 a.m. They watched a movie in their room and fell asleep around 1:00 a.m. The couple was awakened by a fire alarm early Sunday morning and attempted to leave the hotel. However, due to the thick smoke, Ardis was unable to escape and died as a result of smoke inhalation.

As personal representative of Ardis' estate, Ardis' mother initiated a workers' compensation claim, requesting a lump sum settlement and burial expenses in accordance with South Carolina Code Sections 42–9–140 and 42–9–290 (1976). After a hearing, the Single Commissioner found that Ardis' decision to remain in Marietta was reasonable as Ardis "would have been required to travel approximately five hours after a complete day of training." As a result, the Single Commis-

---

1. Combined attempted to argue to the circuit court and to this Court that it was unclear as to whether Combined ever paid for Ardis' room at the hotel due to Combined's direct billing system. In its brief, Combined stated under this billing system, it would pay the cost of the room up front and then charge the expense to the employee's account. However, because Combined offered sales incentives to its employees to offset the chargeback, an employee's room could be paid for if the employee reached certain sales achievements. Because the Commission found substantial evidence existed in the record to establish Combined paid for Ardis' room and because Combined concedes on appeal the facts are undisputed such that our review is limited only to legal errors, the Commission's factual determination on this issue is conclusive.

sioner concluded Ardis sustained a compensable fatal injury by accident and relied on the dual purpose doctrine to buttress his conclusion. Consequently, he awarded Ardis' beneficiaries $2,500 in burial expenses and a lump sum payment for the commuted value of 500 weeks of compensation at the rate of $396.58 per week. The Commission unanimously affirmed the Single Commissioner. On appeal, the circuit court affirmed the Commission. This appeal follows.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard of review for decisions by the Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Although we may not substitute our judgment for that of the Commission as to the weight of the evidence on questions of fact, we may reverse when the decision is affected by an error of law. *Grant v. Grant Textiles*, 372 S.C. 196, 200–01, 641 S.E.2d 869, 871 (2007). Our review is limited to deciding whether the Commission's decision is unsupported by substantial evidence or is controlled by some error of law. *Id.* at 201, 641 S.E.2d at 871. When the facts are not in dispute, as in the instant case, the question of whether or not the accident is compensable becomes purely a question of law. *Douglas v. Spartan Mills, Startex Div.*, 245 S.C. 265, 266, 140 S.E.2d 173, 173 (1965).

## LAW/ANALYSIS

### I. Injury by Accident Arising Out of and in the Course of Employment

Combined contends the circuit court erred in affirming the decision of the Commission because Ardis' death did not occur within the scope and course of his employment. We disagree.

To be compensable, an injury by accident must be one "arising out of and in the course of employment." S.C.Code Ann. § 42–1–160 (Supp.2007). The two parts of the phrase "arising out of and in the course of employment" are not synonymous. *Osteen v. Greenville County Sch. Dist.*, 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998). Also, both parts must exist simultaneously before a court will allow recovery. *Id.*

"Arising out of" refers to the injury's origin and cause, whereas "in the course of" refers to the injury's time, place, and circumstances. *Id.* at 50, 508 S.E.2d at 24.

For an injury to "arise out of" employment, the injury must be proximately caused by the employment. *Douglas*, 245 S.C. at 269, 140 S.E.2d at 175. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.* Further, the injury does not have to be foreseen or expected, but after the event, it must appear to have originated in a risk connected with the employment and to have come from that source as a rational consequence. *Id.* An injury occurs "in the course of" employment when it happens within the period of employment at a place where the employee reasonably may be in the performance of the employee's duties and while fulfilling those duties or engaging in something incidental to those duties. *Broughton v. South of the Border*, 336 S.C. 488, 498, 520 S.E.2d 634, 639 (Ct.App.1999).

Ardis' death arose out of his employment because he was expected to be in Marietta the weekend of January 13–15, 2006 for a company-sponsored sales meeting. The causal connection between Ardis' death and his employment is clear. Combined concedes Ardis would not have been in Marietta that weekend but for the conference. Ardis' presence in Marietta and ultimately his death at the hotel were direct consequences of attending the meeting that weekend.

Citing to *Brownlee v. Wetterau Food Serv.*, 288 S.C. 82, 339 S.E.2d 694 (Ct.App.1986), Combined argues Ardis' death occurred outside the course of employment because Ardis died after the meeting ended, away from Combined's premises, and at a time when Combined exercised no control over his activities. In *Brownlee*, Wetterau sent its employee, Kenneth Brownlee, to a training seminar in St. Louis, Missouri. *Id.* at 84, 339 S.E.2d at 695. The seminar took place from 7:00 a.m. until 10:00 p.m. each day at the hotel where Brownlee was staying. *Id.* Around 9:00 p.m. on the Thursday evening of the seminar, Brownlee and three other people attending the seminar decided to attend a movie. *Id.* Brownlee rode as a passenger in a company-owned vehicle to the movies. *Id.* At

approximately 2:00 a.m. on the return trip to the hotel, all four people were killed in a three-car collision. *Id.* This Court found that Brownlee's death was not compensable because his activities were not job related or employer sponsored. *Id.* at 85, 339 S.E.2d at 695. Further, his death occurred some distance from the hotel and several hours after the last scheduled seminar event had concluded. *Id.* at 84, 339 S.E.2d at 695.

*Brownlee* bears factual similarities to the instant case, namely that Ardis died while attending an out-of-town seminar. However, Ardis' death occurred in a distinctly different place and manner than that of the employee in *Brownlee*. At the time of Ardis' death, he was in the hotel where the seminar took place, sleeping in a room paid for and reserved by Combined. *See* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.02, 25–2 (2008) (stating "[a] traveling employee who dies as a result of a fire or asphyxiation in a hotel or motel during the business trip is within the coverage of the compensation acts ... [as] there is no difference in principle between the employee who is housed upon the employer's own premises and the employee who is housed in a hotel room paid for by the employer"). Moreover, Brownlee's decision to venture away from the hotel inevitably precipitated his death, whereas Ardis' death was the result of circumstances wholly outside his immediate control.[2] While his death in the hotel fire may not have been expected or even foreseeable, the possibility that he could be injured or perish while on an out-of-town business trip is a risk directly connected with the nature of Ardis' employment. *See Stone v. Traylor Bros., Inc.*, 360 S.C. 271, 275, 600 S.E.2d 551, 552–53 (Ct.App.2004) (stating the injury need not be expected or even foreseeable but must appear to have originated in a risk connected to the employment and to have flowed from that source as a rational consequence).

---

**2.** In acknowledging that Brownlee was engaged in an activity planned by himself and other seminar participants at the time of his death, this Court noted that the record was devoid of evidence that Brownlee died while returning to the hotel from a restaurant, as eating and going to eat are viewed as being within the scope of employment on out-of-town business trips. *Brownlee*, 288 S.C. at 84–85, 339 S.E.2d at 695–96.

 Combined maintains the business purpose of the trip ended at the conclusion of the seminar; therefore, Ardis' presence at the hotel on Saturday night was outside the scope of his employment since he was no longer in the performance of his duties. The seminar and Ardis' official business duties may have ended earlier that day, but it is reasonably foreseeable and incidental to the fulfillment of his duties for Ardis and Connor to have spent the night in Marietta before making the five-hour drive back to Wedgefield. *See Beam v. State Workmen's Comp. Fund,* 261 S.C. 327, 332, 200 S.E.2d 83, 86 (1973) (stating "an employee, to be entitled to compensation, need not be in the actual performance of the duties for which he was expressly employed in order for his injury or death to be in the 'course of employment' [as long as] the employee is engaged in a pursuit or undertaking . . . which in some logical manner pertains to . . . his employment"); *see also Broughton,* 336 S.C. at 498, 520 S.E.2d at 639 (stating an employee is within the course of employment for purposes of coverage under the Act if injured while fulfilling work-related duties or engaging in something incidental to those duties).

Ardis had driven five hours the preceding day, had spent almost the entire afternoon in a meeting solely related to his employer's business, and arguably wanted to return to Wedgefield on Sunday morning following a good night's rest. Because the sun sets earlier in January, even if they left immediately after the conference ended, they would not arrive in Wedgefield until after dark. Although Ardis was not engaged in the actual performance of his business duties, Ardis' act of sleeping in the hotel room before returning home the next morning is a logical action given the circumstances and is therefore incidental to the business trip. *see also Martin v. Georgia–Pacific Corp.,* 5 N.C.App. 37, 167 S.E.2d 790, 793 (1969) (internal citation omitted) (stating "traveling employees, whether or not on call, usually do receive protection when the injury has its origin in a risk created by the necessity of sleeping and eating away from home . . . . [t]he hotel fire cases are the best illustration of this"); *cf.* Larson & Larson, *supra,* § 25.03[1] (stating that similar to injuries sustained by a traveling employee while sleeping away from home, injuries sustained by a traveling employee while dining have "been held compensable, even though the accident occurred on a

Sunday evening, a day off, or *involved an extended trip* occasioned by the employee's wish to eat at a particular restaurant or bar") (emphasis added).

## II. Substantial Deviation

Combined additionally argues Ardis participated in a series of personal activities that constituted a substantial deviation from the course of his employment. Combined argues Ardis' acts of going to dinner, shopping, and bowling were substantial deviations that rendered Ardis outside the scope of his employment at the time of his death. We disagree.

"An identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment until the employee returns to the route of the business trip, *unless the deviation is so small as to be disregarded as insubstantial.*" *Gibson v. Spartanburg Sch. Dist.*, 338 S.C. 510, 522, 526 S.E.2d 725, 731 (Ct.App.2000) (internal citation omitted) (emphasis in original).

Even assuming the above-mentioned activities were identifiable deviations, Ardis' death occurred while he was sleeping at the hotel such that any deviation was cured or abandoned by the time of the accident. Further, the act of sleeping, although a personal activity, was incidental to his employment such that his death arose out of his employment. Sleeping is expressly included within the scope of the personal comfort doctrine. The personal comfort doctrine states, "Such acts as are necessary to the life, comfort, and convenience of the [employee] while at work, though strictly personal . . . and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment." *Id.* at 519, 526 S.E.2d at 730 (citing *Osteen*, 333 S.C. at 46, 508 S.E.2d at 23). This includes "imperative acts such as eating, drinking, smoking, seeking relief from discomfort, preparing to begin or quit work, and *resting or sleeping.*" *Id.* at 519–20, 526 S.E.2d at 730 (emphasis added).

Based on the circumstances, Ardis' decision to sleep at the hotel in Marietta on Saturday night was an act that was necessary to Ardis' "life, comfort, and convenience." *See*

Larson & Larson, *supra*, § 25.01 (2008) (stating "[e]mployees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip ... [t]hus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable"). Combined implicitly recognized the reasonableness of Ardis' decision to stay in Marietta by reserving and paying for Ardis' room. Furthermore, we believe a fundamental premise underlying the personal comfort doctrine is that while certain activities undertaken by an employee may immediately benefit the employee in a personal sense, a benefit ultimately inures to the employer as well. *See Osteen*, 333 S.C. at 46–47, 508 S.E.2d at 23 (stating that while an employee who engages in entirely personal activities may be "minister[ing] unto himself ... in a remote sense these acts contribute to the furtherance of his work"). Consequently, Ardis' death occurred during an activity that was incidental to his employment and thus was compensable under the Act.

## III. Dual Purpose Doctrine

 Last, Combined argues the dual purpose doctrine, as relied upon by the Commission, does not bring Ardis' death within the course of his employment because he substantially deviated from the business purpose of the trip at the time of his death.

 The dual purpose doctrine states the following:
[W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.
*Gibson*, 338 S.C. at 520, 526 S.E.2d at 730.

Combined concedes Ardis' trip to Marietta was for a business purpose. While Ardis may have engaged in some per-

sonal activities during the business trip, he traveled to Marietta solely for the benefit of his employer. In the absence of the business purpose, Ardis would not have made the trip at all. *See Gibson*, 338 S.C. at 521, 526 S.E.2d at 731 (finding teacher's injury at Wal–Mart while buying school supplies as well as a lunch box for her child was compensable when trip served both a business and personal purpose but trip was made solely for benefit of school district and in absence of business purpose, the trip would not have occurred at all). Having already found Ardis did not substantially deviate from this business purpose at the time of his death, we conclude the circuit court properly affirmed the Commission in finding Ardis' death occurred in the course and scope of his employment.

## CONCLUSION

Accordingly, the circuit court's order is

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.