674 S.E.2d 482

Jim AARON, Appellant,

v.

Susan J. MAHL, a/k/a Susan J. Scott and Elizabeth
M. Smith, Clerk of Court for Beaufort County,
South Carolina, Defendants,

Of Whom Susan J. Mahl, a/k/a Susan
J. Scott is the Respondent,

and

Susan J. Scott, Respondent,

v.

Rehon & Roberts, a Professional Corporation, Peter
M. Rehon and Ronald D. Foster, Additional
Plaintiffs on the Counterclaim.

No. 26607.

Supreme Court of South Carolina.

Heard Dec. 4, 2008.

Decided March 2, 2009.

Rehearing Denied April 10, 2009.

586

Brian C. Pitts, of Smoot, Pitts, Elliott & Biel, of Hilton Head Island, for Appellant.

Robert V. Mathison, Jr., of Mathison & Mathison, of Hilton Head Island, for Respondent.

Justice WALLER.

This is a direct appeal from the trial court's dismissal of appellant Jim Aaron's action to enforce California and Indiana judgments against respondent Susan Mahl (a/k/a Susan Scott). We certified the appeal pursuant to Rule 204(b), SCACR, and now reverse.

## FACTS/PROCEDURAL HISTORY

Respondent was a California attorney.[1] Between 1996 and 1999, respondent was a civil litigator and managing partner with the law firm now known as Rehon & Roberts ("R & R").[2] Respondent left the firm in November 1999 to start her own firm. In January 2000, R & R brought a California lawsuit against respondent for fraud and deceit, breach of fiduciary duty, conversion, and other causes of action.

In February 2001, she closed her practice, moved out of California, and then traveled with appellant, who was her boyfriend at the time. Eventually, she moved to Bluffton, South Carolina. In July 2001, respondent bought a house in Bluffton for $234,918 in cash, although the Bluffton house originally was titled in appellant's name. According to appellant, respondent titled the house in his name in order to secure it from judgment.[3] Moreover, in August 2001, respondent petitioned the South Carolina family court to legally change her name from Susan J. Mahl to Susan J. Scott.[4]

R & R's case against respondent went to trial on September 17, 2001. By this time, the California trial court had struck

---

1. Respondent was admitted to the California Bar in 1980. Effective February 1, 2001, her status changed to inactive. On July 29, 2005, respondent had disciplinary charges pending, and she tendered her resignation. Respondent's resignation became effective as of September 14, 2005. See http://members.calbar.ca.gov/search/member_detail.aspx?x=95447.

2. The firm was previously named Mahl Rehon Walworth & Roberts.

3. Appellant subsequently deeded the house back to her on October 5, 2001. Nonetheless, respondent filed suit **against appellant** in Indiana on October 11, 2001. According to respondent, appellant "had misappropriated funds entrusted to him." As of the time of trial in South Carolina, the Indiana litigation between respondent (as plaintiff) and appellant (as defendant) was still pending. Moreover, in the instant case, respondent admitted that she encumbered the Bluffton house by mortgages despite the fact that the Indiana court had ordered against such encumbrances.

4. Respondent declared on the name change petition that she had "no intention to defraud anyone or to avoid creditors by virtue of the name change." The family court granted her the name change on September 24, 2001. In the instant case, appellant testified that respondent told him she was going to change her name in order to "disappear" and avoid her creditors.

respondent's answer and cross complaint due to discovery abuse. Respondent did not appear at trial, and judgment was entered in R & R's favor. The California court granted general damages in the amount of $749,572.37, plus $150,000 in punitive damages ("the California judgment").

After trial, respondent moved to have both the California judgment, and the sanction order which had struck her answer, set aside. Respondent represented that after she moved out of California, she received her mail through a mailing service located in South Dakota. Respondent claimed that although she had been aware her trial originally had been set for September 10, 2001, she never received notice that the case was scheduled for September 17, 2001, and did not know her attorney had withdrawn on September 7, 2001. She also alleged that her mental condition—major depression—impaired her ability to participate in the litigation.

The California trial court denied her motion to set aside the judgment.[5] Respondent appealed, but the California Court of Appeal affirmed. *Rehon & Roberts v. Mahl*, 2003 WL 22810438, \*1 (Cal.Ct.App. Nov. 25, 2003). The California Supreme Court denied review on February 18, 2004.

In November or December of 2001, R & R **assigned** the California judgment **for collection** to appellant ("the Assignment").[6] There was also a **collection agreement** between R & R and appellant. This document stated, *inter alia,* that R & R retained appellant as a collector, and thereby assigned the California judgment to him.[7] Appellant was to receive

---

5. The California judge specifically found that respondent "deliberately refrained from obtaining information about the status of her case." The judge also rejected respondent's allegations that her mental condition impaired her functioning, and noted respondent had been "active in litigation in other states, including a change of her surname, buying and selling real estate in two different states, and significant travel." The judge also specifically noted that respondent had "the wherewithal to transfer the title to her late model Jaguar automobile within a few days after she purportedly learned of the judgment against her."

6. The assignment itself is undated, but testimony from appellant's attorney at the South Carolina trial establishes the approximate date of the assignment.

7. The collection agreement was not disclosed in either the California litigation or the Indiana litigation. In May 2004, its production was

50% of the proceeds he collected.

In December 2001, appellant filed suit against respondent in both Indiana and South Carolina to enforce the California judgment. The lawsuit filed in South Carolina is the subject of the instant appeal.

On October 24, 2002, the Indiana circuit court granted appellant summary judgment in favor of appellant ("the Indiana judgment"). The Indiana court specifically rejected respondent's argument that R & R's assignment to appellant was an invalid partial assignment. **Respondent did not appeal the Indiana judgment.** In January 2003, the Indiana court barred respondent from disposing, transferring or removing any of her assets, and specifically ordered respondent not to transfer any interest in her Bluffton house.

Various pretrial orders were also issued by the South Carolina court in the instant case. For example, on October 8, 2003, Judge Kemmerlin (the first Master in Equity assigned to this case) entered an order which directed the Beaufort Clerk of Court to enroll and index the California judgment, but delayed execution until the California appellate process had finalized.

Appellant moved for summary judgment in the instant action after the California judgment became final. The trial court, however, denied the motion and ordered appellant to produce the collection agreement. In July 2004, respondent amended her complaint to assert various counterclaims and defenses, including fraud on the court and the affirmative defense of unclean hands.

On March 20, 2006, the case went to trial before Master–in–Equity Coltrane acting as a special circuit court judge. Ultimately, the trial court issued a written order of judgment which found that appellant could not enforce the California judgment. The trial court found various aspects of the collection agreement "troubling," and specifically found that the Assignment from R & R to appellant was invalid. Additionally, the trial court decided that appellant's hands were unclean because his actions were "rendered possible only through his

ordered by the South Carolina court. This will be further discussed *infra.*

personal relationship with" respondent. Accordingly, the trial court dismissed appellant's complaint.[8]

Both parties moved to alter or amend the judgment order. In its amended order, the trial court ruled on the issue of whether R & R should have been joined as a plaintiff at trial. The trial court found that because appellant had previously objected to respondent's pretrial attempts to join R & R, he was estopped from seeking to join the firm as a party. Moreover, the trial court found joinder of R & R would not be just under Rule 21, SCRCP.

## ISSUES

1. Did the trial court err in failing to find that respondent could not collaterally attack the California and Indiana judgments and by not giving full, faith and credit to both the California and Indiana judgments?

2. Did the trial court err in ruling that appellant had unclean hands?

## STANDARD OF REVIEW

An action to enforce a judgment is an action at law. *Minorplanet Sys. USA Ltd. v. American Aire, Inc.*, 368 S.C. 146, 149, 628 S.E.2d 43, 45 (2006). In an action at law, tried by a judge without a jury, the findings of the trial court must be affirmed if there is any evidence to support them. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## DISCUSSION

### 1. Full Faith and Credit / Collateral Estoppel

Appellant argues the trial court erred by not granting full faith and credit to the California judgment and the Indiana judgment, both of which are final judgments. In addition, appellant contends the trial court should not have allowed respondent to collaterally attack those judgments at the South Carolina trial. We agree.

---

8. Respondent's counterclaims were also dismissed because she did not oppose appellant's directed verdict motion.

■ The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each state to the . . . judicial proceedings of every other state." U.S. Const. art. IV, § 1. Generally, full faith and credit " 'requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it.' " *Hospitality Mgmt. Assocs. v. Shell Oil Co.,* 356 S.C. 644, 653, 591 S.E.2d 611, 616 (2004) (quoting *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963)). Therefore, "a foreign judgment which is regular on its face generally may not be collaterally attacked." *Bankers Trust Co. v. Braten,* 317 S.C. 547, 550, 455 S.E.2d 199, 200 (Ct.App.1995).

■ In other words, "the judgment of a state court should have the same credit, validity and effect, in every other court of the United States, which it had in the state where it was pronounced." *Id.; see also Hamilton v. Patterson,* 236 S.C. 487, 115 S.E.2d 68, 70 (1960) (a defendant may not a second time challenge the validity of a plaintiff's right which has ripened into a judgment) (citation omitted).

We find the trial court erred by not enforcing the California judgment in South Carolina. This judgment resulted from a trial at which respondent did not appear. She subsequently attempted to set aside the judgment, but all her attempts at appeal were denied by the California courts. Thus, the trial court should have followed the general principles of Full Faith and Credit in the instant case and given effect to R & R's valid foreign judgment.

■ Moreover, the basic principles of *res judicata* and collateral estoppel also apply. *Res judicata* bars subsequent actions by the same parties when the claims arise out of the same occurrence that was the subject of a prior action between those parties. *E.g., Riedman Corp. v. Greenville Steel Structures, Inc.,* 308 S.C. 467, 469, 419 S.E.2d 217, 218 (1992). Collateral estoppel prevents a party from re-litigating an issue in a subsequent suit which was actually and necessarily litigated and determined in a prior action. *E.g., Jinks v. Richland County,* 355 S.C. 341, 349, 585 S.E.2d 281, 285 (2003).

Here, respondent expressly raised the issue about the validity of the Assignment to the circuit court in Indiana.[9] The circuit court in Indiana granted appellant summary judgment and **specifically** rejected respondent's attack on the Assignment. Respondent did not appeal from that order. Thus, the Indiana judgment, like the California judgment before it, became final and is entitled to Full Faith and Credit. Clearly, respondent should have been collaterally estopped from making the same argument about the Assignment to the South Carolina courts. *Id.*

Nevertheless, respondent maintains that because the collection agreement was not disclosed in either the California or the Indiana litigation, she is permitted not only to raise and litigate the issue again, but to have the entire lawsuit dismissed because of the existence of the collection agreement (which she alleges invalidates the Assignment). Respondent, however, has already had her bites at the apple. In both the California and Indiana actions, respondent unsuccessfully challenged the validity of the assignment; ultimately, she prevailed here in South Carolina on the very same issue. This was error. We find *res judicata* and collateral estoppel apply to preclude her from re-litigating issues which have already been actually litigated in a prior action.

Respondent further contends that the failure to produce the collection agreement amounts to extrinsic fraud, and therefore, an exception should be made to the general rules governing Full, Faith, and Credit and collateral estoppel.

It is true that these general rules may not apply "where extrinsic fraud has been practiced to procure the judgment." *Bankers Trust Co. v. Braten*, 317 S.C. at 550, 455 S.E.2d at 200. However, allegations that a party failed to disclose documents generally amount to intrinsic, rather than extrinsic, fraud. *Chewning v. Ford Motor Co.*, 354 S.C. 72, 579 S.E.2d 605 (2003). Moreover, relief from a judgment is generally denied in a case of intrinsic fraud because when an issue has been litigated and determined in a former action, it "should not be retried, . . . otherwise litigation would be interminable." *Id.* at 82, 579 S.E.2d at 610 (citation omitted).

---

9. Furthermore, in the California post-judgment litigation, respondent also claimed the Assignment was invalid.

594

Respondent maintains that a fraud on the court was perpetrated in Indiana when appellant and his attorneys attached the Assignment to the complaint seeking to enforce the California judgment. In respondent's view, this amounted to a fabrication because the collection agreement is the "true" assignment document. She therefore argues the Indiana attorneys engaged in a scheme to defraud, and appellant committed perjury in his affidavits which stated that the Assignment was "a true and correct copy of the assignment."

Appellant, on the other hand, argues that the collection agreement does not negate the Assignment, and thus, there was nothing false about presenting the Assignment as evidence that R & R had assigned the California judgment to him for collection.

We find the facts of the instant case do not establish an extrinsic fraud on the court. *See id.* at 82, 579 S.E.2d at 610 ("The subornation of perjury by an attorney and/or the intentional concealment of documents by an attorney are actions which constitute extrinsic fraud.").[10]

## 2. Unclean Hands

Appellant argues that the equitable defense of unclean hands should not have been allowed because he was not seeking equity, but instead was pursuing an action at law—the domestication and enforcement of a foreign judgment. We agree.

The doctrine of unclean hands "precludes a plaintiff from recovering **in equity** if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant." *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107 n. 2, 531 S.E.2d 287, 292 n. 2, (2000) (emphasis added). The equitable doctrine of unclean hands, however, has no application to an action at law. *E.g., Holmes v. Henderson*, 274 Ga. 8, 549 S.E.2d 81 (2001); *Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987). Thus, the trial court erred in applying this particular equitable defense to the

---

**10.** At most, respondent's allegations amount to nondisclosure of a document which generally is considered intrinsic fraud; thus, the issue should not have been re-litigated.

instant case because appellant was not seeking to recover in equity.

## CONCLUSION

For the reasons outlined above, we reverse the trial court's dismissal and remand for enforcement of the California judgment.[11]

**REVERSED AND REMANDED.**

PLEICONES, BEATTY and KITTREDGE, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

I respectfully dissent. In my view, Appellant's repeated failure to present the Collection Agreement amounted to extrinsic fraud, and I would therefore hold that the trial court properly dismissed Appellant's action to enforce the California judgment.

Extrinsic fraud is fraud that induces a person not to present a case or deprives a person of the opportunity to be heard. Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action. *Chewning v. Ford Motor Co.*, 354 S.C. 72, 80, 579 S.E.2d 605, 610 (2003) (quoting *Hilton Head Ctr. of South Carolina v. Public Serv. Comm'n*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987)). On the other hand, intrinsic fraud is fraud which was presented and considered in the trial. *Chewning*, 354 S.C. at 81, 579 S.E.2d at 610. It is fraud which misleads a court in determining issues and induces the court to find for the party perpetrating the fraud. *Id.*

In the instant case, Appellant retained Attorney Thomas Botkin to negotiate an assignment agreement between him and Rehon & Roberts for collection of the California judg-

---

11. We decline to address appellant's remaining issues. *See Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (an appellate court need not address additional issues if the resolution of another issue is dispositive).

ment.[12] Subsequently, Botkin filed suit in Indiana on behalf of Appellant to enforce the California judgment. In the complaint, Botkin alleged that the California judgment had been assigned to Appellant, and he attached Appellant's supporting affidavit and a copy of the Assignment as proof of his right to enforce the judgment. The Collection Agreement was never referenced in the complaint or at any time during the Indiana litigation. Likewise, in the South Carolina complaint, Botkin[13] attached a copy of the Assignment in support of his motion to enforce the judgment and never disclosed the existence of the Collection Agreement. It was not until 2004 following the Master's order to compel that the Collection Agreement was disclosed.

In my view, the evidence shows that Appellant's attorney intentionally concealed the Collection Agreement. As a result of these actions, Respondent was prevented from fully litigating her claim that the assignment was invalid[14] during the Indiana litigation. *See Chewning*, 354 S.C. at 84, 579 S.E.2d at 611 (recognizing that where an attorney embarks on a scheme to intentionally conceal documents, extrinsic fraud constituting a fraud upon the court occurs). For these reasons, I would hold that repeatedly failing to disclose the Collection Agreement constituted extrinsic fraud, and therefore, the trial court did not err in failing to give full faith and credit to the Indiana judgment.

---

12. Botkin's signature appears on the Collection Agreement.

13. Botkin was admitted *pro hac vice* to represent Appellant in the South Carolina litigation.

14. The Collection Agreement purports to disclaim any fiduciary duty between the parties and appears to be a partial assignment, both of which are prohibited under California law. Thus, the alleged assignment upon which Appellant relied for his authority to enforce the judgment was invalid.