723 S.E.2d 813

**Melissa CROSBY, Respondent,**

v.

**PRYSMIAN COMMUNICATIONS CABLES
AND SYSTEMS USA, LLC, Appellant.**

No. 4876.

Court of Appeals of South Carolina.

Heard Nov. 3, 2010.
Decided Aug. 24, 2011.
Withdrawn, Substituted and Refiled Feb. 6, 2012.
Rehearing Denied March 29, 2012.

Robert L. Widener and Richard J. Morgan, both of Columbia, for Appellant.

Stephen Benjamin Samuels, of Columbia, for Respondent.

FEW, C.J.

This appeal is before us on petitions for rehearing filed by Appellant and Respondent. We grant both petitions, and substitute the following opinion.

The workers' compensation commission found that Melissa Crosby was injured in the course and scope of her employment with Prysmian Communications Cables and Systems

USA.[1] Prysmian fired her nineteen days after her injury. Crosby sued Prysmian for retaliatory discharge under section 41–1–80 of the South Carolina Code (Supp.2011), claiming she was fired for filing a workers' compensation claim. In a motion for summary judgment, Crosby asked the circuit court to give preclusive effect to the commission's finding and grant summary judgment on Prysmian's affirmative defense that the workers' compensation claim was fraudulent. We affirm the circuit court's order granting partial summary judgment that the commission's finding is preclusive, and hold this affirmative defense fails as a matter of law. We also affirm the circuit court's order granting summary judgment on Prysmian's counterclaims. Further, we do not address Prysmian's argument that the commission's finding does not extend to the factual question of whether Prysmian acted in good faith and without retaliatory motive because the answer to the question cannot affect the outcome of the case.

## I. Facts and Procedural History

On September 22, 2004, Prysmian hired Crosby to operate machines that colored fiber optic cables. On January 6, 2005, Crosby made a claim for benefits under the Workers' Compensation Act by notifying her supervisor at Prysmian that she had injured her right knee on the job the day before. She formalized the claim on February 1, 2005, by filing and serving a Form 50 in which she alleged she "sustained an accidental injury to her right knee on 1–5–05."

In July 2005, the workers' compensation commission held a hearing on the claim. Crosby and Prysmian presented conflicting evidence as to whether she was injured on the job on January 5. Crosby testified that on January 5 while she was stringing up a fiber optic line on one machine, an alarm activated on another machine. She explained that she hyperextended her right knee as she rushed to the other machine to prevent the severance of the fiber optic line. Prysmian presented evidence that Crosby did not injure the knee on January 5. First, Crosby did not report any injury until the

---

1. Prysmian Communications Cables and Systems USA is the successor to Pirelli Communications Cables and Systems North America. While this cause of action arose before Prysmian succeeded Pirelli, we will refer to Pirelli as Prysmian for the purposes of this opinion.

next day. Crosby admitted she hurt the same knee on January 2, 2005, but testified she iced the knee and it got better before January 5. Crosby testified that she did not report the January 5 injury immediately because she thought it would get better like it had on January 2. Prysmian also presented the testimony of coworkers who observed Crosby limping on her right leg as she arrived at work on January 5. Though Crosby admitted she was limping, she attributed the limp to blisters on her toes she got from wearing high heels at a New Year's Eve church service. The single commissioner found that Crosby "is a credible witness who sustained an injury to her right lower extremity by accident arising out of and in the course of her employment on January 5, 2005." The single commissioner's order was affirmed by an appellate panel. Prysmian did not appeal the appellate panel's decision and it became the final decision of the commission.

On January 25, 2005, Prysmian notified Crosby that she was fired. The letter Prysmian sent to her stated in part:

Both [Prysmian] and its workers' compensation insurer, American International Group, Inc. ("AIG"), have investigated your claim, and determined that your claim lacks merit and, [Prysmian] believes, was filed with fraudulent intent. In this regard, [Prysmian] has obtained statements from several employees who acknowledge that you appeared visibly injured at the time you reported for work on January 5, 2005, which indicates that the injury which you allege occurred in the course and scope of your work on January 5, 2005, did not, in fact, occur during such time. Separately, AIG has conducted an investigation and notified [Prysmian] that it is denying your claim for workers' compensation benefits based on essentially the same evidence.

As a result of AIG's determination and the statements obtained in the course of [Prysmian]'s investigation of your claim, [Prysmian] has decided to terminate your employment, effective immediately, for filing a false claim for workers' compensation benefits.

On December 21, 2005, Crosby filed a civil lawsuit against Prysmian for retaliatory discharge under section 41–1–80. Prysmian answered and asserted an affirmative defense that Crosby "was validly terminated for fraudulently filing a work-

ers' compensation claim."[2] Prysmian also asserted counterclaims for breach of the duty of loyalty, gross negligence, breach of contract, breach of contract accompanied by a fraudulent act, fraud, and negligent misrepresentation. Crosby filed a motion for summary judgment claiming she "is entitled to an order dismissing [Prysmian's] counterclaims with prejudice and to an order finding [Prysmian] terminated [Crosby's] employment in retaliation for filing a workers' compensation claim as a matter of law." The circuit court granted Crosby's motion and ordered the matter set for trial on damages and equitable relief.

Prysmian raises three issues on appeal. First, Prysmian claims the circuit court erred in giving preclusive effect to the factual finding of the commission that Crosby was injured in the course and scope of employment, and thereby granting partial summary judgment to Crosby as to Prysmian's affirmative defense that Crosby filed a fraudulent workers' compensation claim. Second, Prysmian argues that "even if the [commission's] decision has preclusive effect in this case, it does not reach the questions of whether [Prysmian] acted in good faith and without a retaliatory motive." Third, Prysmian claims the circuit court erred in granting summary judgment as to Prysmian's counterclaims.

## II. Standard of Review

Rule 56(c), SCRCP, provides that the circuit court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Each of Prysmian's issues presents questions of law. We decide questions of law with no deference to the lower court. *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008); *Catawba Indian Tribe v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007).

---

**2.** Prysmian's answer contains fourteen defenses, three affirmative defenses, and seven counterclaims. The quoted language is from the circuit court's order granting summary judgment, not from Prysmian's answer. The parties appear to agree that the affirmative defense for filing a fraudulent claim is contained in what Prysmian termed its "tenth defense, third affirmative defense, and third counterclaim" entitled "Statutory Defense pursuant to § 41–1–80."

### III. Retaliatory Discharge Claim under Section 41–1–80

■ In order to recover for retaliatory discharge under section 41–1–80, a plaintiff must establish three elements: "1) institution of workers' compensation proceedings, 2) discharge or demotion, and 3) a causal connection between the first two elements." *Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 242, 540 S.E.2d 94, 97 (2000) (citing *Hines v. United Parcel Serv., Inc.*, 736 F.Supp. 675, 677 (D.S.C.1990)). The circuit court granted partial summary judgment in favor of Crosby as to liability for retaliatory discharge, leaving only the question of damages for the jury. Prysmian concedes Crosby satisfied all three elements.[3] However, Prysmian contends the circuit court's ruling was in error because questions of fact remain as to two affirmative defenses. In its first issue on appeal, Prysmian argues the circuit court erred by giving preclusive effect to the finding of the commission, and thereby granting partial summary judgment to Crosby as to Prysmian's affirmative defense that Crosby filed a fraudulent workers' compensation claim. We find the circuit court ruled correctly. In its second issue on appeal, Prysmian argues the circuit court's ruling should not foreclose Prysmian from proving at trial it fired Crosby in good faith and without retaliatory motive. We do not address this issue.

### a. The Preclusive Effect of the Commission's Finding

■ In *Wallace v. Milliken & Co.*, 305 S.C. 118, 121, 406 S.E.2d 358, 360 (1991), the supreme court recognized an affirmative defense to a section 41–1–80 claim for "violation of specific written company policies." Prysmian asserted this defense based on its "Standards of Conduct," which provide that an employee may be terminated for "acts and behavior which are unacceptable," specifically including: "Filing false

---

3. In our original opinion in this appeal, we stated Prysmian conceded only the first and second elements, but challenged the third. In its return to Crosby's petition for rehearing, Prysmian stated it did not argue the point we addressed as to the third element, and that our ruling in Prysmian's favor on that basis was "improper." This statement leaves Prysmian with no basis on which to challenge the existence of the third element, and thus we hold that Prysmian has conceded the existence of all three.

claims of injury or illness." In its ruling granting partial summary judgment to Crosby, the circuit court stated:

Defendant Prysmian offers, in defense, that [Crosby] was validly terminated for fraudulently filing a workers' compensation claim. The facts support a finding that Plaintiff Crosby's filing of a workers' compensation claim was in good faith. This Court notes the conclusions of law in the December 5, 2005 Order and Report of Commissioner J. Alan Bass of the South Carolina Workers Compensation [Commission]. ("2. Under § 42–1–160, claimant sustained injuries by accident arising out of and in the course of employment.").[4]

Prysmian's appeal presents us with the question of whether a ruling by the workers' compensation commission that the claimant was injured in the course and scope of employment is preclusive as to the affirmative defense that the employee filed a "false claim of injury." We hold that it is.

 The question of whether the ruling by the workers' compensation commission is preclusive is one of issue preclusion, or what has traditionally been called collateral estoppel. *See In re Crews*, 389 S.C. 322, 340, 698 S.E.2d 785, 794 (2010) (equating issue preclusion and collateral estoppel). "Collateral estoppel prevents a party from re-litigating an issue in a subsequent suit which was actually and necessarily litigated and determined in a prior action." *Aaron v. Mahl*, 381 S.C. 585, 592, 674 S.E.2d 482, 486 (2009). Our courts have applied the doctrine of issue preclusion to the factual determinations of administrative tribunals. *See Bennett v. S.C. Dep't of Corr.*, 305 S.C. 310, 312, 408 S.E.2d 230, 231 (1991) ("This Court has repeatedly held that, under the doctrines of *res judicata* and collateral estoppel, the decision of an administrative tribunal precludes the relitigation of the issues addressed by that tribunal in a collateral action." (citing *Earle v. Aycock*, 276 S.C. 471, 475, 279 S.E.2d 614, 616 (1981))). However, not every factual determination by an administrative agency is entitled to preclusive effect. In *Shelton v. Oscar Mayer Foods Corp.*, 325 S.C. 248, 254, 481 S.E.2d 706, 709 (1997), our supreme

---

4. Prysmian also contends the language "support" shows the circuit court used the wrong standard for summary judgment. However, we decide this issue as one of law, and therefore we do not need to address the contention that the court used the wrong factual standard.

court held that the factual findings of the employment security commission are not preclusive in a subsequent action for wrongful discharge. The *Shelton* court set forth the starting point for analyzing whether a particular agency's findings are preclusive:

> In the abstract, there is no legitimate reason to permit a defendant who has already thoroughly and vigorously litigated an issue and lost the opportunity to relitigate the identical question.... The public interest demands an end to the litigation of the same issue. Principles of finality, certainty, and the proper administration of justice suggest that a decision once rendered should stand unless some compelling countervailing consideration necessitates relitigation.

325 S.C. at 252, 481 S.E.2d at 708 (quoting *Beall v. Doe*, 281 S.C. 363, 370, 315 S.E.2d 186, 190 (Ct.App.1984)).

 In order to determine whether an agency's factual finding is preclusive, we must first determine whether the particular finding meets the traditional elements of collateral estoppel. We must then examine whether there is some countervailing consideration which necessitates relitigation.[5] A party claiming preclusive effect under collateral estoppel must demonstrate that the particular issue was "(1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Carolina Renewal*, 385 S.C. at 554, 684 S.E.2d at 782.

 We find that all the elements are met when the commission determines that an injury was sustained in the course and scope of employment. The commission affords both the claimant and the employer a full and fair opportunity to litigate the issue.[6] The parties are entitled to present witnesses and other evidence, make factual and legal argu-

---

5. Under a standard issue preclusion analysis, "even if all the elements for collateral estoppel are met, when unfairness or injustice results or public policy requires it, courts may refuse to apply it." *Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 555, 684 S.E.2d 779, 782 (Ct.App.2009).

6. "The doctrine may not be invoked unless the precluded party has had a full and fair opportunity to litigate the issue in the first action." *Zurcher v. Bilton*, 379 S.C. 132, 135, 666 S.E.2d 224, 226 (2008).

ments, and appeal a ruling they contend was made in error. The commission may not award benefits without actually litigating and directly determining the factual question of whether the claimant was injured in the course and scope of employment, and such a finding is necessary to support a judgment awarding benefits. *See Ardis v. Combined Ins. Co.,* 380 S.C. 313, 320, 669 S.E.2d 628, 632 (Ct.App.2008) ("To be compensable, an injury by accident must be one 'arising out of and in the course of employment.'" (quoting S.C.Code Ann. § 42–1–160 (Supp.2007))). In this case, the record before us reveals that the issue was hotly contested before the commission, and the commission made a specific finding that "claimant sustained injuries by accident arising out of and in the course of employment." Thus, Crosby has established the three elements of collateral estoppel.

■ Prysmian makes several arguments that countervailing considerations necessitate relitigation of the commission's finding. We find none of the arguments persuasive, and no unfairness or injustice will result from the application of issue preclusion to this situation.[7] First, Prysmian argues that the public policy of liberally construing the Workers' Compensation Act and resolving doubts in favor of coverage is a countervailing reason necessitating relitigation. We disagree. We believe the public policy cited by Prysmian actually favors protecting an injured worker from retaliation for filing a claim the commission finds to be work-related. *See Horn v. Davis Elec. Constructors, Inc.,* 302 S.C. 484, 491, 395 S.E.2d 724, 728 (Ct.App.1990) (applying "the policy of this state that injured employees be fully compensated for their work-related injuries" to a retaliatory discharge claim under section 41–1–80).

---

7. In *Shelton,* the supreme court discussed the "countervailing considerations" that necessitated relitigation of the question that had been determined by the employment security commission. 325 S.C. at 252, 481 S.E.2d at 708. We find *Shelton* to be distinguishable because of the numerous differences between proceedings in the employment security commission and the workers' compensation commission. The *Shelton* court noted several points as to which employment security commission hearings are inconsistent with the doctrine of collateral estoppel. 325 S.C. at 252–53, 481 S.E.2d at 708. Those points are not applicable to the workers' compensation commission. The court concluded "public policy dictates the findings made during an ESC hearing should not receive collateral estoppel effect." 325 S.C. at 252, 481 S.E.2d at 708.

Second, Prysmian argues that giving preclusive effect to the finding of the commission interferes with this court's scope of review in a retaliatory discharge case, which allows an appellate court to find facts according to its own view of the evidence. *See Hinton*, 343 S.C. at 242, 540 S.E.2d at 96 ("In reviewing a retaliatory discharge claim, the appellate court may find facts in accordance with its view of the preponderance of the evidence." (citing *Wallace*, 305 S.C. at 120, 406 S.E.2d at 359)). We disagree with this argument as well. Our scope of review requires us to independently evaluate evidence which has been presented to a circuit court in a retaliatory discharge trial, but it does not allow us to reconsider a factual finding of the commission after the question has been fully litigated.[8]

Prysmian makes two other arguments of countervailing considerations. First, Prysmian contends the General Assembly would have given the commission authority to decide retaliatory discharge claims or it would have included such a provision in section 41–1–80 if it intended the commission's findings to be preclusive. Second, Prysmian argues that our holding makes unsuccessful workers' compensation claims preclusive, which would be contrary to the legislative intent of section 41–1–80. We find no merit in either argument. As to the second argument, our holding does not require that a finding by the commission that an injury is not work-related be given preclusive effect.

Therefore, as to Prysmian's first issue on appeal, we find the circuit court properly gave preclusive effect to the factual finding of the commission that Crosby was injured in the course and scope of employment. Applying that factual find-

8. Other states have similarly held that the findings of a workers' compensation commission may be given preclusive effect. *See, e.g., Frederick v. Action Tire Co.*, 744 A.2d 762, 767 (Pa.Super.Ct.1999) ("Pennsylvania appellate courts have consistently held findings in workers' compensation cases may bar relitigation of identical issues in collateral civil actions, even third party tort actions."); *Westman v. Dessellier*, 459 N.W.2d 545, 547 (N.D.1990) ("The decisions of administrative agencies, including those of the [Workers' Compensation] Bureau, may be res judicata even though administrative agencies are not courts."); *McKean v. Municipality of Anchorage*, 783 P.2d 1169, 1171 (Alaska 1989) ("[I]t is well-settled that res judicata may be applied to decisions of workers' compensation boards.").

ing to this case, we affirm the circuit court's decision to grant summary judgment to Crosby on Prysmian's defense that Crosby filed a fraudulent workers' compensation claim.

### b. Prysmian's Good Faith or Retaliatory Motive

In its second issue on appeal,[9] Prysmian argues "even if the [commission's] decision has preclusive effect in this case, it does not reach the questions of whether [Prysmian] acted in good faith and without a retaliatory motive." We do not address this issue. Even if it is possible to make a retaliatory discharge in good faith, the question of whether Prysmian acted in good faith or without retaliatory motive has no legal significance to Crosby's retaliatory discharge claim. Prysmian's letter to Crosby states unequivocally that she was fired because she filed a workers' compensation claim. The commission's finding establishes Crosby filed the claim in good faith. It is not a defense that Prysmian may have mistakenly believed her claim to be false or fraudulent. Section 41–1–80 lists the affirmative defenses available to an employer. Each one focuses on the conduct of the employee, and none relates in any way to whether the employer acted in good faith or without retaliatory motive. *See City of Rock Hill v. Harris*, 391 S.C. 149, 154, 705 S.E.2d 53, 55 (2011) (citing "the canon of [statutory] construction . . . that to express or include one thing implies the exclusion of another") (citation and internal quotation marks omitted). Thus, Prysmian's good faith or lack of retaliatory motive is not relevant to Crosby's claim.

### c. Other Issues Argued by Prysmian

 Prysmian argues it has other valid defenses for Crosby's alleged violations of company policy. For example, Prysmian claims Crosby violated company policy by not reporting her January 5, 2005, injury "immediately." In this respect,

---

9. Prysmian's statement of the second issue is confusing. In subsections A and B of its argument on this issue, Prysmian repeats arguments it made in subsection A of the first issue, that the circuit court erred in giving preclusive effect to the commission's finding. In subsection C, Prysmian states "[a]s demonstrated earlier," and then repeats arguments it made in subsection B of the first issue. However, in light of issues Prysmian raised in its petition for rehearing, we interpret the second issue to raise the argument we decline to address in this section of the opinion.

Prysmian's company policy [10] is in conflict with the Workers' Compensation Act, which provides that an employee shall give notice "immediately on the occurrence of an accident, or as soon thereafter as practicable." S.C.Code Ann. § 42–15–20 (1985). This section, which has been amended since Crosby was injured,[11] allows a maximum of ninety days in which to give notice, but even then permits benefits to be awarded if "reasonable excuse is made to the satisfaction of the Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." *Id.* While Prysmian may be free to terminate an employee for violating company policy, it may not assert such a violation as a basis to defend a retaliatory discharge claim under section 41–1–80 if the policy the employee violated conflicts with the Workers' Compensation Act. If an employer contends the employee violated the Act in this or in some other manner, it may assert that violation to the commission.

Prysmian also argues that the language "indicates" in the circuit court's ruling shows it used the wrong standard for summary judgment. In light of our ruling, we do not specifically address this argument. However, our review of the circuit court's order leads us to believe the court was well aware that it could grant summary judgment only when "there is no genuine issue as to any material fact ...," Rule 56(c), SCRCP, and thus it used the correct standard.

### IV. Prysmian's Counterclaims

Prysmian asserted seven counterclaims to Crosby's retaliatory discharge claim. The trial judge granted summary judgment in favor of Crosby with regard to the counterclaims. Each of the counterclaims arises exclusively out of one of the following two events: (1) Crosby's filing of the workers' compensation claim, or (2) Prysmian's decision to fire Crosby because she filed a false claim. Prysmian alleges damages resulting solely from one of those two events. An employer

---

10. Prysmian's "Standards of Conduct" lists numerous "acts and behavior which are unacceptable," including: "Failure to immediately report any work related injury, illness, or accident."

11. This section was amended in 2007. *See* S.C.Code Ann. § 42–15–20 (Supp.2011).

simply cannot recover damages against an employee for filing a good faith workers' compensation claim. We hold as a matter of law that an employer may not prevail in a retaliatory discharge action on a counterclaim for damages which arise only from the filing of a workers' compensation claim or the employer's decision to fire the plaintiff for filing the claim. Prysmian's counterclaims were properly dismissed because Prysmian alleged no actionable damages caused by Crosby's conduct.

### V. Conclusion

Based on the foregoing reasons, the circuit court's order is **AFFIRMED.**

SHORT, J., concurs.

WILLIAMS, J., concurs in part and dissents in part in a separate opinion.

WILLIAMS, J., concurring in part and dissenting in part.

I concur with the majority in affirming the trial court's grant of summary judgment on Prysmian's counterclaims. However, I respectfully dissent with the portion of the majority's opinion that affirms the trial court's application of collateral estoppel in a retaliatory discharge action pursuant to section 41–1–80.

As to the issue of collateral estoppel, the majority concludes "[N]o unfairness or injustice will result from the application of issue preclusion to this situation." I respectfully disagree. The "countervailing considerations" presented in this case necessitate relitigation.

First, I note the dichotomy regarding the application of preclusion doctrines in the context of administrative tribunals between *Bennett v. South Carolina Department of Corrections.*, 305 S.C. 310, 408 S.E.2d 230 (1991), and *Shelton v. Oscar Mayer Foods*, 325 S.C. 248, 481 S.E.2d 706 (1997).

In *Bennett*, Bennett filed a grievance complaint with the State Employee Grievance Committee (Grievance Committee) challenging his discharge from the South Carolina Department of Corrections (SCDC). *Bennett*, 305 S.C. at 311, 408 S.E.2d

at 231. The Grievance Committee denied Bennett's complaint and Bennett failed to appeal. *Id.* Bennett then filed a retaliatory discharge claim pursuant to section 41-1-80. *Id.* The SCDC moved for summary judgment, claiming the Grievance Committee's decision precluded Bennett's retaliatory discharge claim under the doctrines of collateral estoppel and res judicata. *Id.* The trial court granted summary judgment in favor of SCDC on the grounds of collateral estoppel and res judicata and also held Bennett failed to exhaust his administrative remedies. *Id.* at 312, 408 S.E.2d at 231. On appeal, our supreme court affirmed the trial court and held:

> The doctrines of res judicata and collateral estoppel do not bar recovery under S.C.Code section 41-1-80 for state employees, but they do bar relitigation of issues which have been decided by or should have been presented to the State Grievance Committee. The statutory requirements that state employees bring their grievances before the State Grievance Committee and that they exhaust their administrative remedies before seeking judicial review do not bar the bringing of an action under S.C.Code § 41-1-80, but they do require that the Grievance Committee have the exclusive right to decide those issues subject only to an appeal for judicial review of their decisions.

*Id.* at 313, 408 S.E.2d at 231-32.

In *Shelton,* our supreme court addressed the issue of whether findings of fact made during a South Carolina Employment Security Commission (ESC) hearing were entitled to a preclusive effect under the doctrine of collateral estoppel. 325 S.C. 248, 481 S.E.2d 706. In *Shelton,* a security guard observed Shelton smoking marijuana in the company's parking lot, and as a result, Shelton was allegedly discharged without further investigation. *Shelton,* 325 S.C. at 250, 481 S.E.2d at 707. Shelton filed and received unemployment benefits after an ESC hearing officer found he was discharged without cause. *Id.* Shelton's former employer did not appeal the ESC's decision. *Id.*

Shelton initiated a wrongful termination action. *Shelton,* 325 S.C. at 250, 481 S.E.2d at 707. Based on the ESC's finding, Shelton moved for partial summary judgment, claiming his employer was collaterally estopped from litigating

whether he was discharged for smoking marijuana. *Id.* The trial court denied Shelton's motion for partial summary judgment. *Id.* On appeal, this court initially reversed the trial court's ruling but ultimately affirmed after rehearing the matter. *Id.* at 250–51, 481 S.E.2d at 707. Our supreme court affirmed and held, "The purposes of the ESC are in conflict with the doctrine of collateral estoppel; therefore, public policy dictates the findings made during an ESC hearing should not receive collateral estoppel effect." *Id.* at 252, 481 S.E.2d at 708.

In a footnote, our supreme court distinguished *Bennett,* and stated:

> *Bennett* dealt with the application of collateral estoppel to a proceeding before the State Employee Grievance Committee. Bennett filed a complaint with the grievance committee and the grievance committee ruled in favor of the employer. Instead of appealing this decision through the proper administrative channels, Bennett filed a civil suit alleging he was discharged in retaliation for filing a workers' compensation claim. This Court held the circuit court properly granted the employer's summary judgment motion because the issues in Bennett's civil claim were identical to the issues presented to and ruled upon by the grievance committee. Bennett had abandoned any opportunity for a ruling on these issues in his favor when he failed to appeal the grievance committee's findings. *Bennett* is distinguishable from the matter, *sub judice.* State employees must bring complaints before the grievance committee prior to seeking judicial review; therefore, the hearing before the grievance committee is necessarily more in the nature of a full evidentiary hearing. An ESC hearing only determines the narrow issue of whether an employee may receive unemployment benefits.

*Shelton,* 325 S.C. at 251, 481 S.E.2d at 708.

Next, our supreme court discussed the purpose of an ESC hearing is to expeditiously provide benefits for employees who became unemployed through no fault of their own, and the ESC's jurisdiction is limited to whether an employee is qualified to unemployment benefits. *Id.* at 252, 481 S.E.2d at 708. Thus, the supreme court opined collateral estoppel in the ESC

context would transform these hearings into a forum of lengthy civil litigation of claims relating to the employee's discharge. *Id.* Finally, the supreme court concluded employers generally do not intensely contest ESC hearings and stated:

> Employers normally are not compelled to intensely contest ESC hearings because the stakes are not great in such hearings. An ESC hearing only determines whether an employee was discharged for cause and thus disqualified from receiving unemployment benefits. A wrongful termination lawsuit determines whether the employer wrongfully discharged the employee and seeks to place blame on the employer. The damages available in a wrongful discharge lawsuit are much greater than unemployment benefits. Thus, an employer has more incentive to fully contest a civil suit.

*Id.* at 253, 481 S.E.2d at 708.

Although, a workers' compensation hearing is more akin to a full evidentiary hearing, collateral estoppel is inapplicable to this case. Similar to the ESC context, our State's workers' compensation laws were enacted by our General Assembly to provide benefits to individuals. Specifically, the purpose of our workers' compensation scheme is to protect workers who have suffered injuries arising out of and in the course of their employment. *Parker v. Williams & Madjanik, Inc.*, 275 S.C. 65, 69–70, 267 S.E.2d 524, 526 (1980) (stating our workers' compensation laws reflect a societal recognition to provide swift and sure compensation for injuries arising out of and in the course of employment); *see also Peay v. U.S. Silica Co.*, 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993) ("Workers' compensation laws were intended by the Legislature to relieve workers of the uncertainties of a trial for damages by providing sure, swift recovery for workplace injuries regardless of fault."). This principle was aptly noted in *Cokeley v. Robert Lee, Inc.*, 197 S.C. 157, 168, 14 S.E.2d 889, 893–894 (1941), in which our supreme court stated:

> Compensation laws constitute a form of social legislation and were enacted primarily for the benefit, protection and welfare of working men and their dependents, to relieve them of the uncertainties of a trial in a suit for damages, to cast upon the industry in which they are employed a share

of the burden resulting from industrial accidents, and to prevent the burden of injured employees and their dependents becoming charges on society.

In addition to the public policy underpinnings of workers' compensation law, the claimant-friendly inferences drawn in the workers' compensation context will unduly bind the trial court in subsequent retaliatory discharge actions. It is axiomatic that workers' compensation laws are to be liberally construed in favor of coverage in order to serve the beneficent purpose of the Act and to avoid any incongruous or harsh results. *See Cokeley*, 197 S.C. at 169, 14 S.E.2d at 894; *see also Pelfrey v. Oconee Cnty.*, 207 S.C. 433, 440, 36 S.E.2d 297, 300 (1945) ("Where employer and employee are subject to the compensation act, ... an injured employee should not be excluded from the benefits of the law upon the ground that the accident did not arise out of and in the course of his employment when there is substantial doubt ... of the propriety of such conclusion."). Applying collateral estoppel from the workers' compensation context to a retaliatory discharge action will bind the trial court to a liberal construction doctrine, which favors the inclusion of injured employees. Thus, an issue decided in a workers' compensation hearing, which must be construed in favor of the claimant, will result in the trial court being bound to apply this finding in a separate and distinct retaliatory discharge action. As a result, the application of collateral estoppel will significantly conflict with the trial court's purview in independently determining the merits of a retaliatory discharge claim pursuant to section 41–1–80.

Further, the workers' compensation commission is a forum of limited jurisdiction because it determines the compensability of an injury arising out of and in the course of employment. The imposition of collateral estoppel from a forum that only decides such a narrow issue will force employers and employees to fully litigate ancillary civil claims due to the majority's holding. Therefore, I believe the workers' compensation commission is not the appropriate forum to determine whether a claimant filed a claim in good faith for purposes of section 41–1–80. This point is further underscored because a retaliatory discharge action under section 41–1–80 is not actionable in a workers' compensation proceeding. *See Hinton v. Designer Ensembles, Inc.*, 343 S.C. 236, 242, 540 S.E.2d 94, 96 (2000)

("A retaliatory discharge claim is an equity action tried without a jury.").

Moreover, a workers' compensation proceeding determines whether a claimant has suffered a compensable claim arising out of and in the course of employment. On the other hand, a retaliatory discharge action determines whether the employer wrongfully discharged an employee for filing a workers' compensation claim in good faith. Similar to the reasoning expressed in *Bennett,* I believe due to the nature of the workers' compensation proceedings that applying collateral estoppel prevents the employer from having an opportunity to fully contest the retaliatory discharge action.

Accordingly, I would hold collateral estoppel from the workers' compensation context is inapplicable to a retaliatory discharge action under section 41–1–80. Accordingly, I would reverse the grant of summary judgment and remand this matter for trial.