THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR
 RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2),
 SCACR. 
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
 
 Countrywide
 Home Loans, Inc, Appellant,
 
 
 
 
 

v.

 
 
 
 
 Sharon W.
 Umbarger a/k/a Sharon Umbarger, James B. Umbarger and Branch Banking and
 Trust Company of South Carolina, Respondents.
 
 
 
 
 

Appeal from Lexington County
Clyde N. Davis, Jr., Special Referee

Memorandum Opinion No. 2011-MO-001
 Heard November 16, 2010  Filed January 7,
2011  

 AFFIRMED

 
 
 
 Kevin
 A. Hall and M. Todd Carroll, both of Hall & Bowers, of Columbia, for
 Appellant.
 J.
 Kershaw Spong, of Robinson, McFadden & Moore, of Columbia, for Respondent Branch
 Banking and Trust Company of South Carolina.
 Sharon
 and James Umbarger, both of West Columbia, Pro Se, Respondents.
 
 
 

PER CURIAM:  Countrywide
 appeals an order granting respondent BB&T summary judgment, finding BB&T's
 mortgage had priority over Countrywide's mortgage on property once owned by
 respondent Umbargers.[1] 
 We affirm.
FACTS
In May 2000, the Umbargers
 established a revolving line of credit with BB&T and gave BB&T a
 mortgage, which was recorded in May 2000.  This mortgage required a written
 request in order to be closed.  In November 2002, the Umbargers executed
 another note and mortgage which were subsequently assigned to Countrywide.[2] 
 This mortgage was recorded on November 13, 2002, and on November 15, 2002,
 Countrywide paid off the balance due under the BB&T line of credit. 
 BB&T received no written request to close its line of credit, and on
 November 20, 2002, after Countrywide had paid the balance due, the Umbargers
 borrowed again against the BB&T line of credit.
In January 2007, Countrywide
 began this foreclosure proceeding against the Umbargers and in April 2007
 amended its complaint to add BB&T as a defendant.  In its amended
 complaint, Countrywide prayed that Countrywide's mortgage be declared the first
 lien.  BB&T answered, denying Countrywide's claim that it held a valid
 first lien.  The Umbargers did not answer Countrywide's amended complaint. 
 Countrywide then filed a claim with its title company and did not pursue
further action in this case until May 2008.
In November 2007,
 approximately ten months after Countrywide commenced this foreclosure action
 and about five months after BB&T filed its answer in Countrywide's suit,
 BB&T brought suit to foreclose its mortgage, naming the Umbargers and
 Countrywide as defendants.  The Umbargers and Countrywide were properly served,
 and when no party answered, an order of default was entered and the matter
 referred to the special referee.
On Friday, January
 4, 2008, BB&T's attorney sent a courtesy email to Countrywide's attorney[3] notifying her of the hearing scheduled in BB&T's foreclosure for Monday,
 January 7, 2008, at 11:30 am.  Countrywide's attorney responded by email,
 saying:

 Hi
 Ben.  Happy New Year to you.  Thank you for the information re your hearing. 
 FYI: My client thought they were in first position.  The mortgage you are
 foreclosing came as a surprise to them.  My client had me place their
 foreclosure on hold and file a title claim when they learned of your client's
 mortgage.  They will be interested in bidding at the sale so I would love to
 know when the proposed sale date will be.  Are you asking for a Feb sale date?

BB&T's attorney responded
 that BB&T would be asking for a sale on February 4 at 11:00 am. 
On January 7, 2008, the special
 referee held the foreclosure hearing in BB&T's suit.  Only BB&T
 appeared, and that same day the referee filed an "Order and Judgment of
 Foreclosure and Sale," finding BB&T held the first mortgage and that
 Countrywide's mortgage was "junior and subordinate."  On February 4,
 2008, the property was sold to a third party.
In May 2008, Countrywide
 filed an affidavit of default on the part of the Umbargers in this foreclosure
 action, and in June 2008 this suit was referred to the special referee. 
 BB&T filed a motion for summary judgment seeking a ruling that its lien had
 priority over Countrywide's.  This appeal follows from an order granting
 BB&T's motion. 
 On the merits, the
 special referee held BB&T was entitled to summary judgment on the lien priority
 issue on four alternate grounds:

 (1) BB&T's
 judgment in its foreclosure case was res judicata;
 (2) Countrywide
 waived its right to contest and/or was equitably estopped from challenging the
 priority issue because it chose not to contest the issue at BB&T's January
 2008 hearing despite having been given notice, and indicated at that juncture
 that it would only bid at the sale;
 (3) Laches
 barred Countrywide's claim; and
 (4) that
 Countrywide's remedy was to file a Rule 60(b), SCRCP, motion in the BB&T
 action if it wanted relief from that judgment.

While Countrywide raises a
 number of issues on appeal, we address only one.
ISSUE

 Did the
 special referee err in giving BB&T's judgment preclusive effect?

ANALYSIS
The referee's central holding
 was that Countrywide's claim of priority was barred by res judicata by virtue
 of BB&T's judgment in its foreclosure suit.  Countrywide raises a number of
 challenges to this ruling.  We affirm.
First, Countrywide alleges
 that under Rule 13(a), SCRCP, BB&T was required to assert its claim of lien
 priority as a compulsory counterclaim in Countrywide's foreclosure, and that
 since BB&T did not do so, it was improper to file a separate suit. 
 Assuming that BB&T's priority dispute was a compulsory counterclaim in
 Countrywide's suit, Countrywide provides no authority that BB&T's failure
 to raise the counterclaim affects the validity of BB&T's judgment.  In fact,
 according to the note following Rule 13, if a party fails to assert a
 compulsory counterclaim, then a judgment in that action bars further litigation
 of the claim.  By failing to assert the claim in BB&T's foreclosure action
 which has gone to judgment, Countrywide is barred from relitigating it here by
 virtue of Rule 13.
Countrywide next claims the
 referee erred in finding res judicata barred its claim for priority.  As
 authority, Countrywide cites State v. Bacote, 331 S.C. 328, 503 S.E.2d
 161 (1998) and Aaron v. Mahl, 381 S.C. 585, 674 S.E.2d 482 (2009) for
 the proposition that collateral estoppel does not apply where the issue sought
 to be precluded was decided in a default judgment.  Such may be the case for
 collateral estoppel claims, but default judgments are res judicata in the
 absence of fraud or collusion.  Morris v. Jones, 329 U.S. 545 (1947). 
 The referee's ruling here is predicated on res judicata, and Countrywide has
 not claimed fraud or collusion.  See also Rule 13(a) analysis, supra. 
Countrywide also assails
 BB&T for not raising the issue of res judicata in its answer to this suit,
 dated June 18, 2007, yet BB&T's foreclosure suit was not even filed until
 November 8, 2007 and its judgment not filed until January 2008.  Countrywide
 also argues that the Court should decline to allow use of the doctrine here
 because BB&T should not have filed its own suit.  There is no prohibition
 on BB&T's filing.  Countrywide should have filed an answer or made a Rule
 12(b)(8), SCRCP, motion in BB&T's foreclosure suit rather than defaulting.
CONCLUSION
We affirm the special
 referee's order granting BB&T summary judgment as the issue of lien
 priority is res judicata.
AFFIRMED.
TOAL,  C.J., PLEICONES,
 BEATTY, HEARN, JJ., and Acting Justice James E. Moore, concur.

[1] The Umbargers are not participating in this appeal.
[2] We will refer to this as the Countrywide Mortgage.
[3] This attorney is not representing Countrywide in this appeal.